UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEE SPENCER,

                                   Plaintiff,

                                                                    6:20-cv-1316
v.                                                                  (GTS/TWD)

SCHENECTADY POLICE DEPARTMENT;[1]
JOHN DOE 1; JOHN DOE 2; SCHENECTADY
COUNTY CORRECTIONAL FACILITY,


                                   Defendants.
_____

APPEARANCES:

LEE SPENCER
  Plaintiff, *pro se*
19-A-0781
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**ORDER AND REPORT-RECOMMENDATION**

        The Clerk has sent for review a *pro se* civil rights complaint filed by Plaintiff Lee

Spencer pursuant to 42 U.S.C. §1983 ("Section 1983").  (Dkt. Nos. 1, 9.[2])  Plaintiff, who is

_____

        [1]  Although Plaintiff names the "Schenectady County Police Department," the address
that Plaintiff provided for this Defendant is that of the Schenectady Police Department.  Any
reference in the complaint to "Schenectady County Police Department" shall be deemed to refer
to the Schenectady Police Department.  The Clerk of the Court is directed to amend docket
accordingly.

        [2]  On or about October 23, 2020, Plaintiff filed the complaint in this action.  (Dkt. No. 1.)
On or about November 25, 2010, Plaintiff filed an "amended complaint," naming the
Schenectady County Correctional Facility ("Schenectady County C.F.") as the only Defendant.
(Dkt. No. 9.)  At this early juncture, and in deference to Plaintiff's *pro se* status, rather than treat
the "amended complaint" as a superseding pleading, the Court will consider Plaintiff's "amended

presently incarcerated, has not paid the statutory filing fee and seeks leave to proceed *in forma paupers* ("IFP Application").  (Dkt. Nos. 2, 4.[3])  Also before the Court is a letter motion for appointment of counsel.  (Dkt. No. 8.)

## I.     IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).  Upon review, Plaintiff has now submitted a completed and signed IFP Application, which demonstrates economic need, and has filed the inmate authorization form required in the Northern District of New York.  (Dkt. Nos. 2, 4.)  Accordingly, Plaintiff's IFP Application is granted.[4]

## II.    SUFFICIENCY OF THE COMPLAINT

### A.      Standard of Review

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

---

complaint" as a supplement to his original complaint and consider them as a single pleading for purposes of initial review.  (Dkt. Nos. 1, 9.)  The Clerk is directed to add Schenectady County Correctional Facility as a Defendant on the docket.

[3]  On October 26, 2020, the Court administratively closed this action due to Plaintiff's failure to comply with the filing fee requirement.  (Dkt. No. 3.)  On October 29, 2020, this action was restored to the Court's active docket.  (Dkt. No. 5.)

[4]  Section 1915 permits "an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."  *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).  Additionally, Plaintiff should also note that although his IFP Application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

28 U.S.C. § 1915(e) directs that when a person proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ."  28 U.S.C. § 1915(e)(2)(B)(ii).

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A.

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation."  *Id*.

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

A *pro se* litigant's pleadings are held to a less strict standard than attorney drafted pleadings. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."). Because plaintiff is proceeding *pro se*, the Court construes her pleadings "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). However, this "does not exempt a [*pro se* litigant] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

### B.    Summary of the Complaint

On March 30, 2018, Plaintiff was arrested in Schenectady, New York by Defendants John Doe 1, Patrol Man Officer ("John Doe 1") and John Doe 2, Patrol Man Officer ("John Doe 2").[5]  (Dkt. No. 1 at 4.[6])  While effecting his arrest, John Doe 1, "cuffed [Plaintiff] with excessive force." *Id.*  Plaintiff asked John Doe 1 "if he could not put cuffs on more than one click" because the "cuffs were very small and [Plaintiff] has big hands and wrist[s]." *Id.* Plaintiff was not resisting arresting, nor did he run. *Id.*  Plaintiff was "put into back seat." *Id.*

Plaintiff asked John Doe 2, "can you loosen my right cuff it is to tight." *Id.*  He replied, "we will at station." *Id.*  While in the back seat, Plaintiff's "wrist and right hand get excessively hot loosing feeling." *Id.*  Plaintiff yelled, "these fucking cuff I have not feeling in my hand." *Id.* John Doe 2 stated, "when we get to precinct the cuffs will come off." *Id.*

---

[5]  The address Plaintiff provided for John Doe 1 and John Doe 2 is that that of the Schenectady Police Department.  Any references in the complaint to "Patrol Man Officer" is deemed to refer to an Officer of the Schenectady Police Department.

[6]  Page references to documents identified by docket number are to the page numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.  Unless noted, excerpts from the complaint are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Plaintiff has annexed to the complaint copies of what appear to be mailings and filings in the Supreme Court of the State of New York and Schenectady City Court, and related correspondence.  *See id*. at 6-17.[7]  In these attached documents, Plaintiff claims, *inter alia*, that as a result of the above-incident he suffers "lack of mobility in right wrist pain and nerve damage in thumb.  The hand cuff where to tight causing thumb and pointer finger to turn blueish-purple."  *Id*. at 15.

Based on the foregoing, Plaintiff's complaint lists two causes of action: (1) John Doe 1 "puts cuffs on with excessive force" and (2) John Doe 2 refused to loosen cuffs "causing unconstitutional conditions of confinement."  *Id*. at 5.  As relief, Plaintiff seeks "medical surgery, physical therapy," and unspecified money damages for "pain and suffering for 2 years."  *Id*.

In the supplemental complaint naming the Schenectady County C.F. as the only Defendant, Plaintiff states that "[t]he medical evaluation and treatment I was provided was an x-ray."  (Dkt. No. 9 at 4.[8])  He was told "it is not broken and it is not life threatening, so there was nothing they could do about it."  *Id*.  "Nurse Barrett[9] proceed to tell it was carpal tunnel

---

[7]  To the extent that the exhibits are relevant to the incident described in the complaint, the Court will consider the complaint as well as any documents attached.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

[8]  It is unclear whether Plaintiff was a pretrial detainee or was serving a sentence at the time of the events complained of in the supplemental complaint.  For purposes of this initial review, the Court assumes that Plaintiff was a pretrial detainee when his claims arose.

[9]  Rule 10(a) of the Federal Rules of Civil Procedure requires that all defendants be listed in the caption of the complaint.  The rule provides that, "the title of the complaint must name all the parties."  Fed. R. Civ. P. 10(a).  "A party not named in the caption of the complaint is not a party to the action."  *Bloodywone v. Bellnier*, No. 9:18-CV-0615 (GTS/DJS), 2018 WL 10550308, at 5 n.8 (N.D.N.Y. Oct. 17, 2018) (citing *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (the failure to name a party in the caption makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims")).  "If people are not also named in the caption of the [ ] complaint, they will not be defendants in the case."  *Whitley v.*

syndrome, even gave me paper print outs on it." *Id.*  Plaintiff lists two causes of action in the supplemental complaint, (1) negligent medical care; and (2) deliberate indifference to medical care.  *Id.* at 5.  Plaintiff notes he takes 600 mg of ibuprofen twice a day "to stop the pain."  *Id.* He requests "pain & suffering settlement 7 million dollars."  *Id.*

For a complete statement reference is made to the complaint.  (Dkt. Nos. 1, 9.)

## C.    Analysis

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990); *see also Myers v. Wollowitz*, No. 95-CV-0272 (TJM), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  Thus, to state a cognizable claim under Section 1983, a complaint must allege "(1) 'that some person has deprived [the plaintiff] of a federal right,' and (2) 'that the person who has deprived [the plaintiff] of that right acted under color of state law.'"  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)) (alteration omitted).

The Court construes Plaintiff's complaint as raising the following: (1) Forth Amendment excessive force and failure to intervene claims against John Doe 1, John Doe 2, and Schenectady

---

*Krinser*, No. 06- CV-0575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15, 2007).  Nurse Barrett is not identified as a Defendant in the caption of the complaint or the list of parties.  Thus, the Court will not construe the complaint to include any claims or causes of action against Nurse Barrett.

Police Department; and (2) Fourteenth Amendment and state law claims related to his medical care against Schenectady County C.F.

### 1.       John Doe 1 and John Doe 2

The Fourth Amendment to the Constitution (as applicable to the actions of local police departments and police officers through the Fourteenth Amendment) protects the right of the people to be free from unreasonable searches or seizures.  *See* U.S. Const. amend. IV.  In particular, the Fourth Amendment prohibits the police from using unreasonable or excessive force when they engage in the arrest of a person.  *See Graham v. Connor*, 490 U.S. 386 (1989); *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019).  But "[b]ecause 'the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, determining whether the amount of force an officer used is reasonable 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'"  *Cugini*, 941 F.3d at 612 (quoting *Graham*, 490 U.S. at 396).  Thus, the determination whether the police have used excessive force in the course of arresting a suspect "'requires careful attention to the facts and circumstances of each particular case, including' (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'"  *Id.* (quoting *Graham*, 490 U.S. at 397).

In addition, "[i]t is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)); *accord Sloley v.*

*VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019).  "As such, an officer who fails to intervene where he or she observes or has reason to know that excessive force is being used or a constitutional violation has been committed by a fellow officer is liable for the preventable harm caused by that officer."  *Portillo v. Webb*, No. 16-CV-4731, 2017 WL 4570374, at *4 (S.D.N.Y. Oct. 11, 2017) (collecting cases), *report and recommendation adopted by* 2018 WL 481889 (S.D.N.Y. Jan. 17, 2018).

This Circuit has recognized that "excessively tight handcuffing that causes injury can constitute excessive force."  *Shamir v. City of N.Y.*, 804 F.3d 553, 557 (2d Cir. 2015). Traditionally, in determining whether officers applied handcuffs reasonably, courts would consider the following factors: (1) whether the handcuffs were unreasonably tight; (2) whether the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists.  *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (citation omitted).  With regard to the injury prong, "[t]here is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort."  *Id*. at 468 (collecting cases).  To prevail, a plaintiff's injuries "need not be 'severe or permanent,' but must be more than merely '*de minimis*.'"  *Usavage v. Port Auth. of New York & New Jersey*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013) (quoting *Vogeler v. Colbath*, No. 04 Civ. 6071, 2005 WL 2482549, at *9 (S.D.N.Y. Oct. 6, 2005)).  "The most common injuries found to satisfy the injury requirement in handcuff cases are scarring and nerve damage."  *Id*. (citations omitted).

Recently, however, the Second Circuit issued a decision clarifying the law with respect to excessive force claims involving tight handcuffing.  To that end, in *Cugini*, *supra*, the Second Circuit held that it was no longer a pre-requisite to a viable excessive force claim for the

individual to have specifically voiced protest to the officer that the handcuffs were too tight. *Cugini*, 941 F.3d at 614. Rather, the touchstone of an excessive force claim regarding tight handcuffing turns on whether a reasonable officer would have known that the force used was excessive. *Id*. at 614.

Mindful of the Second Circuit's direction that a *pro se* plaintiff's pleadings must be liberally construed, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court recommends that Plaintiff's Fourth Amendment excessive force and failure to intervene claims against John Doe 1 and John Doe 2 are sufficient to survive initial review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A and require a response. In so recommending, the Court expresses no opinion regarding whether the claims could survive a properly filed motion to dismiss or motion for summary judgment.

## 2.     Schenectady Police Department

The caption of the complaint lists the Schenectady Police Department as a Defendant. (Dkt. No. 1 at 1.) "[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing § 1983 claim brought against the Lynbrook Police Department); *see also La Grande v. Town of Bethlehem Police Dep't*, No. 1:08-CV-0738 (LEK/DRH), 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009) ("Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, [the plaintiff's] [c]omplaint is dismissed as against the Town of Bethlehem Police Department."); *Jenkins v. Liadka*, No. 5:10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *5 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant.").

While Plaintiff could sue the municipality—the City of Schenectady—rather than one of its "departments," a municipality may only be named as a defendant in certain circumstances. Pursuant to the standard for establishing municipality liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), in order to set forth a cognizable claim for municipal liability under Section 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.")  A municipality may be liable for deprivation of constitutional rights under Section 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989).  A plaintiff must also establish a causal connection – an affirmative link–between the policy and the deprivation of his constitutional rights. *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985) (plurality opinion).

Here, Plaintiff has failed to identify or allege any facts plausibly showing the existence of a municipal policy or custom of the City of Schenectady authorizing, permitting, allowing, or tolerating "abuses in violation of the Constitution" or any affirmative link between such a policy and defendants' alleged actions with regard to Plaintiff.  Importantly, a municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010).  Only when the municipality, through the execution of its policies, actually

deprives an individual of his constitutional rights, is it liable for the injury.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Based upon the foregoing, the Court recommends dismissal of Plaintiff's complaint against Schenectady Police Department with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Moreover, notwithstanding a very liberal interpretation of the complaint, to the extent that Plaintiff's complaint could be construed to be asserted against the City of Schenectady, as the real party in interest, it is recommended that the *Monell* claims be dismissed with leave to replead pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).[10]

### 3.    Schenectady County C.F.

The caption of the supplemental complaint lists Schenectady County C.F. as a Defendant. (Dkt. No. 9 at 1.)  However, for reasons explained above, because the Schenectady County C.F. is an administrative arm of Schenectady County, without a legal identity separate and apart from

---

[10]  If this Report-Recommendation is adopted, should Plaintiff choose to file an amended complaint, he should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'"  *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.).  Therefore, in any amended complaint, Plaintiff must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Finally, any such amended complaint will replace the existing complaint (Dkt. Nos. 1, 9), and must be a wholly integrated and complete pleading that does not rely upon or incorporate any pleading or document previously filed with the court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.").

the County, it lacks the capacity to be sued.  *See* Part III.C.2, *supra*.; *see also Lukes v. Nassau Cty. Jail*, No. 12-CV-1139, 2012 WL 1965663, at *2 (E.D.N.Y. May 29, 2012) (dismissing claims against defendant Nassau County Jail because it "is an administrative arm of Nassau County, without a legal identity separate and apart from the County"); *Solis v. Cty. of Westchester*, No. 94-CV-5102, 1995 WL 14072, at *1 (S.D.N.Y. Jan. 10,1995) (noting that the Westchester County Department of Corrections is not a legal entity and that the County of Westchester is the real party in interest).

Based upon the foregoing, the Court recommends dismissal of Plaintiff's complaint against Schenectady County C.F. with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

In deference to Plaintiff's *pro se* status, the Court construes Plaintiff's claims as if they had been brought against Schenectady County, the real party in interest.  However, as discussed above, municipal liability is limited under Section 1983 by *Monell*.  *See* Part III.C.2, *supra*. Here, for the reasons explained above, notwithstanding a very liberal interpretation of the complaint, to the extent that Plaintiff's complaint could be construed to be asserted against Schenectady County, as the real party in interest, it is recommended that the *Monell* claims be dismissed with leave to replead pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### D.   Service of Process

The Court notes that if the above recommendations are adopted, the remaining Defendants to this action will be John Doe 1 and John Doe 2, City of Schenectady Police Officers.  The U.S. Marshals, however, cannot effect service on a "John Doe" defendant.  The Second Circuit has instructed that district courts should assist incarcerated *pro se* plaintiffs in

identifying John Doe defendants.  *See Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997) (explaining that a "district court may pursue any course that it deems appropriate to a further inquiry into the identity" of a John Doe defendant in assisting a *pro se* plaintiff).  In this case, Plaintiff has identified the date and location of the alleged incident.

Accordingly, in deference to Plaintiff's status as an incarcerated, *pro se* litigant, and mindful of the Court's obligation to assist such litigants in identifying unknown defendants, the Court recommends that the District Court direct the Clerk to sua sponte add the City of Schenectady Chief of Police, Eric Clifford, as a named Defendant in the action solely so that service may proceed and issue may be joined.  Once issued is joined, Plaintiff must seek, through discovery, the identity of the John Doe defendants.  *See Paralta v. Doe*, No. 04-CV-6559, 2005 WL 357358, at *2 (W.D.N.Y. Jan. 24, 2005) (permitting the addition of the superintendent to facilitate service and discovery to uncover the identities of the unknown defendants) (citing *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997) (suggesting that a district court should assist a *pro se* incarcerated litigant with his inquiry as to the identity of an unknown defendant and "may pursue any course that it deems appropriate to a further inquiry into the identity" of the unknown defendant)); *see also Brown v. Doe*, No. 96-CV-1222, 1999 WL 893070, at *2 (S.D.N.Y. Oct. 18, 1999) (deferring the defendants' motion to dismiss until they provided the requisite discovery information and materials to the pro se prisoner litigant on the grounds that "[p]laintiffs, especially *pro se* incarcerated plaintiffs should be given an opportunity to identify . . . unknown defendants through discovery)."  By recommending this measure, the Court does not suggest in any way that the City of Schenectady Chief of Police was personally involved in the constitutional deprivations alleged in Plaintiff's complaint or is otherwise subject to liability for the acts giving rise to Plaintiff's claims.

### III.    MOTION FOR APPOINTMENT OF COUNSEL

Upon review of the docket, the Count notes Plaintiff filed a letter dated November 4, 2020, addressed to the "*Pro se* Assistance Program."  (Dkt. No. 8.)  Plaintiff states he has "tried so many other attorneys" and can "provide the dates the letters were sent out."  *Id*.  He further states, "Please help me in anyway possible."  *Id*.  To the extent Plaintiff's letter seeks the appointment of *pro bono* counsel, the letter motion is denied without prejudice.

"A party has no constitutionally guaranteed right to the assistance of counsel in a civil case."  *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011).  Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party.  *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997).  As the Second Circuit stated in *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986), the court "should first determine whether the indigent's position seems likely to be of substance."  802 F.2d at 61.  If the claim satisfies that threshold requirement, a number of factors must be carefully considered by the court in ruling upon such a motion.  Among these factors are:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge*, 802 F.2d at 61-62).  This is not to say that all, or indeed any, of these factors are controlling in a particular case.  Rather, each case must be decided on its own facts.  *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 61).

At this early stage of the litigation, where the complaint has not yet been served on the Defendants and they have not had the opportunity to respond to Plaintiff's allegations, Plaintiff's

letter motion for appointment of counsel is premature.  Therefore, Plaintiff's letter motion is denied without prejudice and with leave to renew should the District Judge allow this action to proceed.  (Dkt. No. 8.)  Plaintiff must show proof that he has attempted to obtain counsel from the private sector or public interest firms prior to filing a renewed motion for appointment of counsel.

ACCORDINGLY, it is hereby

ORDERED that Plaintiff's IFP Application (Dkt. Nos. 2, 4) is GRANTED; and it is further

RECOMMENDED that the Clerk provide the superintendent of the facility designated by Plaintiff as his current location with a copy of Plaintiff's Inmate Authorization (Dkt. No. 4), and notify the official that this action has been filed and that Plaintiff is required to pay to the Northern District of New York the statutory filing fee of $350, over time, pursuant to 28 U.S.C. § 1915; and it is further

RECOMMENDED that the Clerk provide a copy of Plaintiff's Inmate Authorization (Dkt. No. 4.) to the Financial Deputy of the Clerk's Office; and it is further

ORDERED that the Clerk is directed to AMEND the docket such that Defendant "Schenectady County Police Department" is changed to Defendant "Schenectady Police Department;" and it is further

ORDERED that the Clerk is directed to ADD Schenectady County Correctional Facility as a Defendant; and it is further

RECOMMENDED that the Plaintiff's Fourth Amendment excessive force and failure to intervene claims against Defendants John Doe 1 and John Doe 2 SURVIVE the initial review and require a response; and is further

**RECOMMENDED** that Plaintiff's claims against Defendant Schenectady Police Department be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and it is further

**RECOMMENDED** that Plaintiff's claims against Defendant Schenectady County Correctional Facility be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and it is further

**RECOMMENDED** that Plaintiff be granted leave to replead consistent with the foregoing; and it is further

**RECOMMENDED** that the Clerk **ADD** the City of Schenectady Chief of Police, Eric Clifford, as a Defendant **FOR PURPOSES OF SERVICE AND DISCOVERY ONLY**; and it is further

**ORDERED** that Plaintiff's letter motion for appointment of *pro bono* counsel (Dkt. No. 8) is **DENIED WITHOUT PREJUDICE AND WITH LEAVE TO RENEW**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with a copy of the unpublished decision cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[11]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

---

[11]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1)

(Supp. 2013); Fed. R. Civ. P. 72, 6(a).


Dated:  November 30, 2020
        Syracuse, New York


Thérèse Wiley Dancks
United States Magistrate Judge

Myers v. Wollowitz, Not Reported in F.Supp. (1995)

1995 WL 236245

1995 WL 236245
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James N. MYERS, Jr., Plaintiff,

v.

Heather WOLLOWITZ, Attorney, Defendant.

No. 95–CV–0272 (TJM) (RWS).
|
April 10, 1995.

**Attorneys and Law Firms**

James N. Myers, Jr., Troy, NY, pro se.

*DECISION AND ORDER*

McAVOY, Chief Judge.

*I. Background*

**\*1** Presently before this Court is the above-captioned plaintiff's application to proceed in forma pauperis and civil rights complaint. Plaintiff has not paid the partial filing fee required to maintain this action.

For the reasons stated below, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as without arguable basis in law.

In his *pro se* complaint, plaintiff seems to claim that plaintiff was represented by defendant Wollowitz, a public defender for the County of Rensselaer, in a County Court proceeding. Plaintiff alleges that after a criminal proceeding in that Court, plaintiff was "sentenced to a illegal sentence." *Id.* at 2. Plaintiff contends that due to the ineffective assistance of his counsel, defendant Wollowitz, his constitutional rights were violated. For a more complete statement of plaintiff's claims, reference is made to the entire complaint filed herein.

*II. Discussion*

Consideration of whether a *pro se* plaintiff should be permitted to proceed in forma pauperis is a two-step process. First, the court must determine whether the plaintiff's economic status warrants waiver of fees and costs under 28 U.S.C. § 1915(a). If the plaintiff qualifies by economic status, the court must then consider whether the cause of action

stated in the complaint is frivolous or malicious. *Moreman v. Douglas,* 848 F.Supp. 332, 333 (N.D.N.Y.1994) (Scullin, J.); *Potnick v. Eastern State Hosp.,* 701 F.2d 243, 244 (2d Cir.1983) (per curiam).

In the present case, upon review of the plaintiff's inmate account statements, the Court has determined that plaintiff's financial status qualifies him to file or "commence" this action in forma pauperis. 28 U.S.C. § 1915(a). Turning to the second inquiry, a court may "dismiss the proceeding under 28 U.S.C. § 1915(d) if the court thereafter determines that ... the action is frivolous or malicious." *Moreman,* 848 F.Supp. at 333 (citation omitted).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Although the court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility on the court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis. Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(d) is appropriate to prevent abuses of the process of the court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327. *See generally Moreman,* 848 F.Supp. at 334.

**\*2** 42 U.S.C. § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights. *See, e.g., Von Ritter v. Heald,* 91–CV–612, 1994 WL 688306, \*3, 1994 U.S.Dist. LEXIS 17698, \*8–9 (N.D.N.Y. Nov. 14, 1994) (McAvoy, C.J.). A party may not be held liable under this section unless it can be established that the defendant has acted under the color of state law. *See, e.g., Rounseville v. Zahl,* 13 F.3rd 625, 628 (2d Cir.1994) (noting state action requirement under § 1983); *Wise v. Battistoni,* 92–Civ–4288, 1992 WL 380914, \*1, 1992 U.S.Dist. LEXIS 18864, \*2–3 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted).

In the present case, the sole defendant named by plaintiff is the Rensselaer County public defender who apparently represented plaintiff in the criminal proceeding discussed in

1995 WL 236245

his complaint. *See* Complaint at 2. However, "[i]t is well settled that an attorney's representation of a party to a court proceeding does not satisfy the Section 1983 requirement that the defendant is alleged to have acted under color of state law...." *Wise,* 1992 WL 380914 at *1, 1992 U.S.Dist. LEXIS 18864 at *2–3; *see also D'Ottavio v. Depetris,* 91–Civ–6133, 1991 WL 206278, *1, 1991 U.S.Dist. LEXIS 13526, *1–2 (S.D.N.Y. Sept. 26, 1991).

Since the plaintiff has not alleged any state action with respect to the Section 1983 claim presently before the Court, plaintiff's complaint, as presented to this Court, cannot be supported by any arguable basis in law and must therefore be dismissed pursuant to 28 U.S.C. § 1915(d). *Neitzke,* 490 U.S. at 328.

Accordingly, it is hereby

ORDERED, that leave to proceed or prosecute this action in forma pauperis is denied, and it is further

ORDERED, that this action is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as lacking any arguable basis in law, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff by regular mail.

I further certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a).

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 236245

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

Portillo v. Webb, Not Reported in Fed. Supp. (2017)

Case 6:20-cv-01316-GTS-TWD   Document 10   Filed 11/30/20   Page 20 of 76

2017 WL 4570374

2017 WL 4570374
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jamie PORTILLO, Plaintiff,
v.
Jennifer WEBB, Manuel Aldir,
and Lycha Gasanov, Defendants.

16 Civ. 4731 (VEC) (GWG)
|
Signed October 11, 2017

**Attorneys and Law Firms**

Jamie Portillo Coxsackie, NY, pro se.

Agnetha Elizabeth Jacob, New York City Law Department, New York, NY, for Defendants.

## REPORT AND RECOMMENDATION

GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

*1 Plaintiff Jamie Portillo, currently an inmate at the Coxsackie Correctional Facility in Coxsackie, New York, brings this lawsuit pro se pursuant to 42 U.S.C. § 1983, making claims regarding an incident that occurred while he was being transported from a medical clinic at Rikers Island to East Elmhurst Hospital. The defendants have moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons stated below, the motion to dismiss should be granted, with Portillo given leave to file an amended complaint as to his claim of excessive force.

[1] See Notice of Motion, filed Mar. 3, 2017 (Docket # 23); Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint, filed Mar. 3, 2017 (Docket # 24); Plaintiff Opposition to Defendant's Motion [to] Dismiss Action, filed May 11, 2017 (Docket # 29) ("Pl. Opp'n"); Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Amended Complaint, filed June 1, 2017 (Docket # 32) ("Defs. Reply").

## I. BACKGROUND

For the purpose of deciding the defendants' motion to dismiss, the Court assumes the allegations in Portillo's complaint are true and draws all reasonable inferences in his favor. See, e.g., Brown Media Corp. v. K & L Gates, LLP, 854 F.3d 150, 156–57 (2d Cir. 2017).

On a motion to dismiss for failure to state a claim, a court's

> consideration is limited to the factual allegations in [the complaint], which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit.

Brass v. Am. Film Tech., 987 F.2d 142, 150 (2d Cir. 1993) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47–48 (2d Cir. 1991)); accord Halebian v. Berv, 644 F.3d 122, 130 n.7 (2d Cir. 2011). Furthermore, in light of Portillo's pro se status, the Court has considered factual allegations contained in his submissions opposing the defendants' motion where they amplify claims made in the complaint. See, e.g., London v. N.Y. State Dep't of Homeless Servs., 2014 WL 3720401, at *1 (S.D.N.Y. July 29, 2014) (considering factual allegations from pro se plaintiff's opposition submissions when deciding motion to dismiss); Woods v. Goord, 2002 WL 731691, at *1 n.2 (S.D.N.Y. Apr. 23, 2002) (considering pro se prisoner's factual allegations in briefs as supplementing complaint); Burgess v. Goord, 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999) ("In general, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum.") (citations and internal quotation marks omitted) (quoting Gadson v. Goord, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997)).

*2 On October 13, 2015, while detained at the Anna M. Kross Correctional Facility ("A.M.K.C.") on Rikers Island, New York, Portillo collapsed in the hallway from "a mild

Portillo v. Webb, Not Reported in Fed. Supp. (2017)

2017 WL 4570374

Case 6:20-cv-01316-GTS-TWD   Document 10   Filed 11/30/20   Page 21 of 76

stroke." Amended Complaint, filed Nov. 28, 2016 (Docket # 17) ("Am. Compl."), at 4; Jamie Portillo Medical Records, dated Oct. 13, 2015 (attached to Pl. Opp'n) ("Medical Records"). A doctor who reported to the scene said Portillo had lost consciousness and had facial numbness, "facial droop", and weakness in his right leg. Medical Records. Portillo says that, despite explaining to corrections officers that he could not walk, he was forced to walk to the medical clinic at A.M.K.C., which caused him to fall and injure himself. Am. Compl. at 4. Portillo does not explain who was present during this incident, who forced him to walk, or how he was injured.

Portillo was then placed in shackles and handcuffs and taken to East Elmhurst Hospital, escorted by Corrections Officers ("C.O.s") Jennifer Webb, Manuel Aldir, and Lycha Gasanov. Id. Portillo claims that he was again forced to walk, despite repeatedly telling the officers and a doctor at the hospital that he was unable to do so. Id.; Pl. Opp'n at 1. [2] Portillo said that he was dizzy, his vision was blurry, and all he remembered was being dragged by his arms in the hospital. Am. Compl. at 4. He asserts that a doctor and C.O. Webb picked Portillo up by the arms and "let him go," which caused Portillo to fall face-first and injure himself. Id. He alleges the fall caused him to injure his ankles, face, arms, nose, stomach, temple, back, and neck. Pl. Opp'n at 1–2. He alleges that x-rays and other tests were conducted, and that he was given medication for his injuries. Am. Compl. at 5. Portillo later complained that his ankles were "swollen and bruised from being shackled when he was transported to the hospital on October 13," and that "[h]e ha[d] had trouble walking from the ankle injuries since that date." See Email from Agnes Baik, undated (attached to Pl. Opp'n) ("Baik Letter"). He alleges that C.O.s Aldir and Gasanov "did nothing to help [Portillo] or the situation" while he was forced to walk or when he was dropped by C.O. Webb, "they just watched and laughed." Am. Compl. at 4–5.

[2]     Portillo's motion papers do not specify which of the officers "forced him to walk." Pl. Opp'n at 1, 4.

Construed liberally, Portillo's claims are that (1) C.O. Webb used excessive force against him, based on his fall in the hospital; and (2) C.O.s Gasanov and Aldir either failed to intervene while he was being "forced to walk" by C.O. Webb or were deliberately indifferent to his medical needs.

## II. APPLICABLE LAW

### A. Standard for Motion to Dismiss

A defendant may move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) where the plaintiff "fail[s] to state a claim upon which relief can be granted." To survive such a motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). As the Supreme Court noted in Iqbal,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Id. (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Federal Rule of Civil Procedure 8(a) because it has merely "alleged—but it has not shown—that the pleader is entitled to relief." Id. at 679, 129 S.Ct. 1937 (brackets and internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

*3 Pro se plaintiff filings are liberally construed, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (citations and internal quotation marks omitted); accord Littlejohn v. City of New York, 795 F.3d 297, 322 (2d Cir. 2015); see also Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (review of pro se complaint for sufficiency requires "special solicitude, interpreting the complaint to raise the strongest claims that it suggests") (citation, brackets, and internal quotation marks omitted). However, even the pleadings of these plaintiffs "must contain factual allegations sufficient to raise a right to relief above the speculative level." Dawkins v. Gonyea, 646 F.Supp.2d 594, 603 (S.D.N.Y. 2009) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955); accord Ford v. Rodriguez, 2016 WL 6776345, at *2 (S.D.N.Y. Nov. 16, 2016).

Portillo v. Webb, Not Reported in Fed. Supp. (2017)

Case 6:20-cv-01316-GTS-TWD Document 10 Filed 11/30/20 Page 22 of 76

2017 WL 4570374

B. 42 U.S.C. § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); see 42 U.S.C. § 1983. Section 1983 does not create any federal rights; rather, it provides a mechanism to enforce rights established elsewhere. Gonzaga Univ. v. Doe, 536 U.S. 273, 285, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002); accord Ross v. Woods, 412 Fed.Appx. 392, 393 (2d Cir. 2011) (summary order). Additionally, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Victory v. Pataki, 814 F.3d 47, 67 (2d Cir. 2016) (internal quotation marks omitted) (quoting Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)); see also Iqbal, 556 U.S. at 672, 129 S.Ct. 1937 ("In a § 1983 suit .... Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

1. Excessive Force

"[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (citing Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).[3] At one time, a pretrial detainee asserting an excessive force claim had to satisfy a subjective and objective element similar to what is required to prove an Eighth Amendment claim. Id. at 47–48. Specifically, a plaintiff had to show that the alleged wrongdoing was "objectively sufficiently serious or harmful enough" to cause a constitutional violation, "contrary to contemporary standards of decency and repugnant to the conscience of mankind," id. at 50 (citations and internal quotation marks omitted), and that the alleged wrongdoer subjectively "had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct," Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000) (citations and internal quotation marks omitted).

[3]   We assume that Portillo was a pretrial detainee and not a convicted prisoner on the date of the incident,

October 13, 2015, because he made no assertion that he was "convicted" in his original complaint but did make such an assertion when he filed his amended complaint on November 18, 2016. Am. Compl. at 2, 6. Defendants additionally do not appear to oppose this assumption. See Defs. Reply at 4 n.1 (acknowledging that "[i]t is unclear ... whether Plaintiff was a pretrial detainee" when the incident occurred).

*4   In Kingsley v. Hendrickson, —— U.S. ——, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), however, the Supreme Court held that when force is "purposefully or knowingly" used against a pretrial detainee, the detainee must show only that the force "was objectively unreasonable." Id. at 2473. Kingsley thus altered the test previously used in the Second Circuit for claims arising under the Fourteenth Amendment. See Ross v. Corr. Officers John and Jane Does 1–5, 610 Fed.Appx. 75, 76 n.1 (2d Cir. 2015) (summary order); Vargas v. City of New York, 2017 WL 1214434, at *12 (E.D.N.Y. Mar. 31, 2017); Carmona v. City of New York, 2016 WL 4401179, at *2 (S.D.N.Y. Mar. 1, 2016); see also Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017) (recognzing that Kingsley has overruled Second Circuit law in the Fourteenth Amendment "deliberate indifference" context).

Kingsley held that

> objective reasonableness turns on the facts and circumstances of each particular case. A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. A court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security.

Kingsley, 135 S.Ct. at 2473 (citations, brackets, and internal quotation marks omitted) (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); and

Portillo v. Webb, Not Reported in Fed. Supp. (2017)

Case 6:20-cv-01316-GTS-TWD    Document 10    Filed 11/30/20    Page 23 of 76

2017 WL 4570374

Bell, 441 U.S. at 540, 547, 99 S.Ct. 1861). Factors to consider in judging the objective reasonableness of a use of force include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id.; accord Perez v. Ponte, 236 F.Supp.3d 590, 621 (E.D.N.Y. 2017); Carmona, 2016 WL 4401179, at *2.

## 2. Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Terebesi v. Torreso, 764 F.3d 217, 243 (2d Cir. 2014) (internal quotation marks omitted) (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)). As such, an officer who fails to intervene where he or she observes or has reason to know that excessive force is being used or a constitutional violation has been committed by a fellow officer is liable for the preventable harm caused by that officer. Anderson, 17 F.3d at 557; accord Porter v. Goord, 467 Fed.Appx. 21, 23 (2d Cir. 2012) (summary order); Baines v. City of New York, 2017 WL 3425746, at *2 (S.D.N.Y. Aug. 9, 2017). Although liability may attach only where there was "a realistic opportunity to intervene to prevent the harm from occurring," Anderson, 17 F.3d at 557, "[w]hether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise," id.; accord Terebesi, 764 F.3d at 243–44; Stephens v. Venettozzi, 2016 WL 929268, at *11 (S.D.N.Y. Feb. 24, 2016); Bowen v. Patrick, 2012 WL 3743409, at *7 (S.D.N.Y. Aug. 29, 2012).

## 3. Deliberate Indifference

**\*5** A prisoner may make a constitutional claim arising out of medical treatment where he or she can show "deliberate indifference" to his or her medical needs.

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed in the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

Estelle v. Gamble, 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citations, footnotes, and internal quotation marks omitted); accord Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 138 (2d Cir. 2013).

A pretrial detainee enjoys similar protections under the Due Process Clause of the 14th Amendment. See Darnell, 849 F.3d at 29. To establish that a prison official was deliberately indifferent toward an inmate's health, a pretrial detainee must satisfy two prongs: (1) "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process"; and (2) "a 'subjective prong'—perhaps better classified as a 'mens rea prong' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions." Id.

Under the objective prong, the alleged medical need must be "sufficiently serious." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citation and internal quotation marks omitted). A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain." See id. (citation and internal quotation marks omitted). "Factors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects

Portillo v. Webb, Not Reported in Fed. Supp. (2017)

2017 WL 4570374

an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (citations, brackets, and internal quotation marks omitted).

As with claims of excessive use of force, the Supreme Court's decision in Kingsley altered the subjective prong where a claim is made by a pretrial detainee. See Darnell, 849 F.3d at 34–35 ("Following the Supreme Court's analysis in Kingsley, there is no basis for the reasoning ... that the subjective intent requirement for deliberate indifference claims under the Eighth Amendment ... must apply to deliberate indifference claims under the Fourteenth Amendment."). Now,

> to establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety. In other words, the "subjective prong" (or "mens rea prong") of a deliberate indifference claim is defined objectively.

**\*6** Id. at 35; accord Brown v. City of New York, 2017 WL 1390678, at \*11 (S.D.N.Y. Apr. 17, 2017). As was previously true, there is no liability for "negligently inflicted harm." Kingsley, 135 S.Ct. at 2472 (emphasis and internal quotation marks omitted) (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)); accord Darnell, 849 F.3d at 36.

## III. DISCUSSION

Portillo's description of the circumstances in which he fell is vague and not entirely consistent. In his amended complaint he states that he was in shackles and handcuffs when he reached the hospital, and that after he explained to C.O. Webb

and a doctor at the hospital that he could not walk, "they picked me up, let me go and I immediately fell causing me to injure myself" and that at this time he was being "dragged" by his arms. Am. Compl. at 4. In his opposition to defendants' motion he claims that the officers escorting him "forcefully took plaintiff against his will by the arms while shackled by the hands and feet, and 'forced him to walk', to wit, then plaintiff fell face forward." Pl. Opp'n at 1.

The circumstances under which Portillo fell to the floor are critical to determining whether he has stated an excessive force claim. At the time he was being transported, Portillo had a "minor stroke." See Am. Compl. at 4. The external symptoms of the stroke and the officers' knowledge of the diagnosis are not clear from the complaint, however. Thus it is not clear that "forcing [Portillo] to walk" would cause him any serious harm. Cf. Jones v. Westchester Cty., 182 F.Supp.3d 134, 141, 151 (S.D.N.Y. 2016) (excessive force claim stated where plaintiff had suffered injury to knee, hip, and lower back from fall and corrections officers forced him to walk though they knew he was in severe pain). Without the officers' having knowledge that being forced to walk could cause serious harm, the mere act of "forcing" plaintiff to walk could not support a claim of excessive force. See, e.g., D'Attore v. City of New York, 2013 WL 1180395, at \*6 (S.D.N.Y. Mar. 15, 2013) (no excessive force claim where officer transported wheelchair-bound inmate down hallway in reckless and violent manner), appeal dismissed, No. 15–1722 (2d Cir. Jul. 28, 2015); Prescott v Riker Island Med. Staf., 2011 WL 1435218, at \*6 (S.D.N.Y. Apr. 12, 2011) (motion to dismiss granted where plaintiff "at most" showed shoves, pushes, and shackling during transport from hospital to Rikers "may have caused some aggravation to [plaintiff's] pre-existing injuries").

Of more significance are the circumstances under which C.O. Webb and the doctor were responsible for Portillo falling to the ground. Portillo's allegations, however, do not show that C.O. Webb and the doctor deliberately or even recklessly dropped Portillo to the floor. See, e.g., Jones, 182 F.Supp.3d at 152; Goodwine v. Nat'l R.R. Passenger Corp., 2014 WL 795756, at \*2, \*9 (E.D.N.Y. Feb. 27, 2014); Pooler v. Hempstead Police Dep't, 897 F.Supp.2d 12, 26 (E.D.N.Y. 2012). Portillo's descriptions of the incident say only that he was "let ... go" or that because he was forced to walk, "to wit, then plaintiff fell face forward." Am. Compl. at 4. Pl. Opp'n at 1. To be sure, Portillo's allegations that the fall caused "injuries" to his head, neck, face, arm, and leg distinguish Portillo's claim from cases in which no discernible

Portillo v. Webb, Not Reported in Fed. Supp. (2017)

2017 WL 4570374

physical injury resulted from the use of force. Cf. Arnold v. Westchester Cty., 2012 WL 336129, at *7 (S.D.N.Y. Feb. 3, 2012) ("forced fall" allegedly caused by officers making shackled pretrial detainee walk quickly down hallway not constitutional violation where inmate did not claim the fall caused him any notable physical injury). Portillo, however, gives no explanation of the nature of his injuries. See Am. Compl. at 4.

*7 In light of these deficiencies, the Court cannot conclude that the complaint shows that C.O. Webb used excessive force.

It is clear, however, that Portillo has not stated a failure to intervene claim against C.O.s Aldir and Gasanov. Even if Portillo's pleading showed that the fall to the ground was the result of excessive force—a prerequisite to a failure to intervene claim, see, e.g., Walker v. City of New York, 2014 WL 12652345, at *12 (E.D.N.Y Sept. 3, 2014) ("To prevail on a failure to intervene claim a plaintiff must demonstrate the existence of an underlying constitutional violation in which the defendant officer failed to intervene.") (collecting cases), aff'd, 638 Fed.Appx. 29 (2d Cir. 2016)—the allegations do not suggest that C.O.s Aldir and Gasanov had "a realistic opportunity to intervene to prevent the harm from occurring," Anderson, 17 F.3d at 557. In the absence of such an opportunity, they cannot be liable for any failure to intervene.

To the extent that Portillo intended to raise a claim that C.O.s Webb, Aldir, or Gasanov were deliberately indifferent to his medical needs, such a claim must also be dismissed. Portillo concedes that the officers were taking him to a hospital to receive treatment for his stroke. See generally Am. Compl. at 4. It may be that Portillo intended to claim that defendants failed to offer him "adequate medical attention" for his inability to walk. See Pl. Opp'n at 2. Assuming arguendo that the temporary inability to walk is a sufficiently serious medical condition, Portillo's pleadings do not allege facts from which a reasonable person could believe defendants knew or should have known that a "substantial risk of serious harm" existed simply because they required Portillo to walk to a hospital bed after a mild stroke. To the extent Portillo claims defendants should have provided him with a wheelchair, see Pl. Opp'n at 2, this is best characterized as a disagreement as to the method of addressing his inability to walk, and thus not grounds for a section 1983 claim. See Chance, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create

a constitutional claim."); accord Washington v. Artus, 708 Fed.Appx. 705, 709, 2017 WL 3911573, at *2 (2d Cir. Sept. 7, 2017). To the extent defendants were negligent, no Eighth or Fourteenth Amendment claim can arise from such negligence. See Farmer v. Brennan, 511 U.S. 825, 835–36, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); accord Darnell, 849 F.3d at 36.

Notwithstanding the defects in the complaint, the Second Circuit has stated that courts should not dismiss pro se complaints "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (citations and internal quotation marks omitted); accord Pearson v. Reid–Robinson, 632 Fed.Appx. 19, 19 (2d Cir. 2016) (summary order); see also Milanese v. Rust–Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) (leave to file amended complaint should not be denied absent evidence of undue delay, bad faith, undue prejudice to non-movant, or futility) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Although Portillo has amended his complaint once, he did so at a time when he was unaware of the potential defects in his claims. While the Court sees no cure that can be made to the failure-to-intervene and deliberate indifference claims, it is possible that the excessive force claim could withstand a motion to dismiss if pled with appropriate facts.

IV. CONCLUSION

*8 For the reasons stated above, defendant's motion to dismiss (Docket # 23) should be granted. Portillo should be permitted 21 days to file a second amended complaint in the event he believes that he can cure the defects in his excessive force claim.

The Court notes also that a record attached by plaintiff to his motion papers states that he is a "monolingual Spanish Speaker." Baik Letter. Any amended filing must contain a clear explanation that the new amended complaint was composed by Portillo and that it has been accurately translated.

**PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of

Portillo v. Webb, Not Reported in Fed. Supp. (2017)

Case 6:20-cv-01316-GTS-TWD    Document 10    Filed 11/30/20    Page 26 of 76

2017 WL 4570374

this Report and Recommendation to file any objections. <u>See also</u> Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court, with copies sent to the Hon. Valerie E. Caproni at 40 Foley Square, New York, New York 10007. Any request for an extension of time to file objections or responses must be directed to Judge Caproni. If a party fails to file timely objections, that party will not be permitted to raise any objections to this

Report and Recommendation on appeal. <u>See Thomas v. Am.</u> 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4570374

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

Portillo v. Webb, Not Reported in Fed. Supp. (2018)

Case 6:20-cv-01316-GTS-TWD    Document 10    Filed 11/30/20    Page 27 of 76

2018 WL 481889

2018 WL 481889
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jamie PORTILLO, Plaintiff,
v.
Jennifer WEBB, Manuel Aldir,
and Lycha Gasanov, Defendants.

16-CV-4731 (VEC)(GWG)
|
Signed 01/17/2018

**Attorneys and Law Firms**

Jamie Portillo, Coxsackie, NY, pro se.

Agnetha Elizabeth Jacob, New York City Law Department,
New York, NY, for Defendants.

ORDER ADOPTING REPORT & RECOMMENDATION

VALERIE CAPRONI, United States District Judge

**\*1** Plaintiff Jamie Portillo, proceeding *pro se*, alleges
that excessive force was used against him while he was
incarcerated at the Anna M. Kross facility on Rikers Island
in October 2015. Am. Compl. (Dkt. 17) at 4. Plaintiff alleges
that he suffered a "minor stroke" on October 13, 2015. Am.
Compl. at 4. The Defendants, corrections officers at the Kross
facility, responded to Plaintiff and escorted him to the Kross
medical clinic and then to the East Elmhurst Hospital. Am.
Compl. at 4. Plaintiff alleges that defendant Webb twice
forced him to stand and attempt to walk, causing him to
fall and injure himself. Am. Compl. at 4. Seeking redress
for injuries sustained in his falls, Plaintiff alleges claims for
excessive force against Webb and failure to intervene against
defendants Aldir and Gasanov.

The Defendants moved to dismiss on the grounds that
Portillo's amended complaint does not plausibly allege that
excessive force was used by Webb or that the other defendants
had a duty to intervene and failed to do so. Dkts. 23, 24.
The Court referred this case to Magistrate Judge Gorenstein
for general pretrial and for preparation of a report and
recommendation on any dispositive motions. Dkt. 10; *see
also* Dkt. 27 (amended order of referral). The Defendants
filed their motion to dismiss on March 3, 2017. Dkts. 23,

24. Portillo opposed the motion on May 11, 2017. Dkt. 29.
Defendants replied on June 1, 2017. Dkt. 32.

On October 12, 2017, Magistrate Judge Gorenstein issued
a report and recommendation (the "R&R"). Dkt. 34. Judge
Gorenstein concluded that the Amended Complaint did not
sufficiently allege facts from which the Court could infer that
it was objectively unreasonable for defendant Webb to force
Portillo to stand and walk. R&R at 10-11. Judge Gorenstein
also found that the Amended Complaint did not allege that
defendants Aldir and Gasanov had a realistic opportunity
to intervene and prevent excessive force from being used.
R&R at 12. Judge Gorenstein recommended that the Court
grant Portillo leave to amend. R&R at 12-13. In lieu of
filing objections to the R&R, Plaintiff filed a second amended
complaint. [1] Dkt. 37.

[1]     On November 13, 2017, in response to Plaintiff's
        request for more time to object to the R&R,
        the Court extended until November 27, 2017,
        Plaintiff's deadline to file objections. Dkt. 36.
        Because Plaintiff's amended complaint had not yet
        been dismissed, the Court did not set a deadline
        for Plaintiff to file a second amended complaint.
        Nonetheless, Plaintiff filed his second amended
        complaint on November 28, 2017, and did not file
        any objections to the R&R.

**DISCUSSION**

In reviewing a report and recommendation, a district court
"may accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge."
28 U.S.C. § 636(b) (1)(C). When no objections are made to
a magistrate judge's report, a district court may adopt the
report so long as "there is no clear error on the face of the
record." *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 211
(S.D.N.Y. 2013) (citing *Nelson v. Smith*, 618 F. Supp. 1186,
1189 (S.D.N.Y. 1985)). Failure to file timely objections to
the magistrate judge's report constitutes a waiver of those
objections in the district court and on later appeal to the
United States Court of Appeals. *See Small v. Sec'y of Health
& Human Servs.*, 892 F. 2d 15, 16 (2d Cir. 1989) (*per curiam*);
*see also Thomas v. Arn*, 474 U.S. 140, 149–50 (1985) (holding
that Section 636 does not require review of a magistrate's
findings if no party objects).

2018 WL 481889

**\*2** Because no objections to the R&R were filed, the Court reviews for "clear error." *Phillips, 955 F. Supp. 2d at 211*. Upon careful review, the Court finds no clear error in Magistrate Judge Gorenstein's well-reasoned decision. Accordingly, the Court adopts the R&R in full.

## CONCLUSION

Defendants' motion to dismiss is GRANTED and Plaintiff is given leave to file a second amended complaint. As noted above, Plaintiff has already filed a second amended complaint. The Court will issue a new referral to Magistrate Judge Gorenstein relative to Plaintiff's second amended complaint.

The Clerk of Court is respectfully requested to close the open motion at docket entry 23. The Clerk of Court is further requested to mail a copy of this Order and the R&R to Plaintiff and to note mailing on the docket.

The Court certifies under *28 U.S.C. § 1915(a)(3)* that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purposes of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that appellant demonstrates good faith when seeking review of a non-frivolous issue).

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 481889

---

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

 © 2020 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by   Graham v. City of New York,   E.D.N.Y.,   March 6, 2013

KeyCite Overruling Risk - Negative Treatment

Overruling Risk   Pearson v. Callahan,   U.S.,   January 21, 2009

2005 WL 2482549
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Christian VOGELER and Derek J. Kiechle Plaintiffs,
v.
Police Officer Michael COLBATH, Defendant.

No. 04 Civ. 6071(LMS).
|
Oct. 6, 2005.

*DECISION AND ORDER*

SMITH, Magistrate J.

**\*1** This matter is before me by consent of the parties pursuant to 28 U.S.C. § 636(c). Plaintiffs filed this cause of action pursuant to 42 U.S.C. § 1983 against Rockland County, Town of Ramapo Police Officer Michael Colbath, Village of Spring Valley Police Officer Kevin Freeman, and Unknown Police Officers 1 through 5. In a stipulation agreed upon by the Plaintiffs and Defendant Colbath, the claims against Rockland County and Police Officer Kevin Freeman were dismissed with prejudice.[1] Plaintiffs claim that Defendant arrested them without probable cause, impermissibly searched their persons and conducted a strip search, maliciously prosecuted them, and exerted excessive force during the course of their arrest. Defendant filed a motion for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure seeking to have all claims against him dismissed. Plaintiffs then filed a cross-motion for summary judgment pursuant to Rule 56(a). For the foregoing reasons, I grant the Defendant's motion for summary judgment in its entirety and dismiss all claims against him. Accordingly, Plaintiffs' cross-motion for summary judgment on all claims is denied.

1    *See* Docket Entry # 40, Stipulation and Order of Discontinuance as to Defendants Rockland County and Police Office Kevin Freeman.

*BACKGROUND*

The parties do not dispute the following facts that are material to a decision in this case.

On the evening of May 1, 2003, Plaintiffs Christian Vogeler ("Vogeler") and Derek Kiechle ("Kiechle") were inside Room 308 at the Wellesley Inn ("Room 308,") located in Ramapo, New York, when the Rockland County Task Force ("Task Force") executed a no-knock search warrant on Room 308. Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts ("Pls' Statement") at ¶¶ 1, 13; Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def's Statement") at ¶ 12. Defendant Michael Colbath ("Colbath,") as a member of the Town of Ramapo Police Department, worked with the Task Force and was present when the no-knock search warrant was executed. Def's Statement at ¶ 1,7; Plaintiffs' Response to Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Pls' Resp.") at ¶¶ 1,7. The Task Force had been conducting an investigation into allegations of narcotics activity within Room 308. Def's Statement at ¶ 8; Pls' Resp. at ¶ 8. As a part of its investigation, the Task Force had utilized the assistance of a confidential informant, and on two occasions had directed him to purchase narcotics from "Nino," the suspected dealer, who was then located in Room 308. Def's Statement at ¶ 9; Pls' Resp. at ¶ 9.

On May 1, 2003, the Task Force obtained a search warrant from a Village of Airmont Justice Court Judge for Room 308. Def's Statement at ¶ 10; Pls' Resp. at ¶ 10. The Task Force, including the Defendant, executed the search warrant. Def's Statement at ¶ 12; Pls' Resp. at ¶ 12. Subsequent to execution of the warrant, Plaintiffs Vogeler and Kiechle, along with "Nino," the suspected dealer, were arrested. Def's Statement at ¶ 19; Pls' Resp. at ¶ 19. Plaintiffs were handcuffed, placed face-down on the floor, frisked and searched. Pls' Statement at ¶ 16; Defendant's Response to Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts ("Def's Resp.") at ¶ 16. While no illegal substances were recovered from the Plaintiffs' persons, Pls' Statement at ¶ 23; Def's Resp. at ¶ 23, the Task Force seized and removed from the room nine clear bags containing a white powder, subsequently identified as cocaine, nine clear bags containing a green leafy substance, later identified as marijuana, an additional sandwich bag

containing marijuana, an electronic scale, numerous empty clear zip lock bags, and a sizable amount of U.S. currency. Def's Statement at ¶ 17; Pls' Resp. at ¶ 17.

**\*2** Plaintiffs were charged with Criminal Possession of a Controlled Substance in the Third Degree, N.Y. PENAL LAW § 220.16(1) (Consol.2005), and Unlawful Possession of Marijuana, N.Y. PENAL LAW § 221.05 (Consol.2005). Pls' Statement at ¶ 25; Def's Resp. at ¶ 25. After additional investigation, the District Attorney dismissed the charges. Pls' Statement at ¶ 27; Def's Resp. at ¶ 27. Plaintiffs then initiated this cause of action against the Defendants for false arrest and false imprisonment, illegal search and seizure, malicious prosecution and use of excessive force during the course of arrest.

*DISCUSSION*

A. *Introduction*

Plaintiffs assert that Defendant Colbath violated their Fourth Amendment rights to be free from false arrest and false imprisonment, to be free from unreasonable searches and seizures, to be free from malicious prosecution, and to be free from excessive force by the police when making an arrest. Plaintiffs' Complaint ("Pls' Compl.") at ¶ 15. The Defendant moves for summary judgment on the first three claims as he had probable cause to arrest the Plaintiffs and therefore cannot be liable. Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def's Mem.") at 1. The Defendant also seeks summary judgment on the Plaintiffs' claim of excessive force as there is no evidence in the record indicating that it was the Defendant who lifted the Plaintiffs from the ground. Def's Mem. at 6. Defendant seeks summary judgment on this claim on the separate ground that any force exerted during the arrest was reasonable, and thus he is entitled to summary judgment as a matter of law. *Id.* Lastly, Defendant exerts a broad of claim of qualified immunity insulating him from civil liability for his actions, if any, which may have violated the Plaintiffs' constitutional rights. [2] *Id.* at 11.

[2] Although the Defendant invokes the protection of qualified immunity, I need not determine whether he is entitled to its protection because I conclude at no point did he violate the Plaintiffs' constitutional rights. Under the Supreme Court's holding in *Saucier v. Katz,* 533 U.S. 194, 201 (2001), a

court must conduct a two-step analysis when determining whether a police officer is entitled to qualified immunity. A court must first determine whether the defendant violated the plaintiff's constitutional rights. *Id.* If the court determines that the defendant's actions did not constitute a violation, the qualified immunity analysis ends. *Id.*

Because a review of the record in this case indicates that there are no genuine issues of material fact, I hereby grant the Defendant's motion for summary judgment on all claims and deny the Plaintiffs' cross-motion for summary judgment.

B. *Summary Judgment*

Under the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 320-23 (1986). "Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion." LOCAL CIV. R. 56.1(a). A fact is "material" when it may affect the outcome of a case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* A trial judge may, therefore, grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. *Id.* at 250. The inquiry performed is the threshold inquiry of determining whether there are any genuine factual issues that properly can be resolved only by a finder of fact. *Id.*

**\*3** Where a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56. Under Local Rule 56.1(b), "the papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate,

short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." LOCAL CIV. R. 56.1(b). Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." ' *Berger v. United States,* 87 F.3d 60, 65 (2d Cir.1996) (quoting *Celotex,* 477 U.S. at 323) (alteration in original). "The nonmoving party must have 'had the opportunity to discover information that is essential to his [or her] opposition' to the motion for summary judgment." *Trebor Sportswear Co. v. The Limited Stores, Inc.,* 865 F.2d 506, 511 (2d Cir.1989) (quoting *Anderson,* 477 U.S. at 250 n. 5). Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[ ] all reasonable inferences in its favor." *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.,* 277 F.3d 232, 236 (2d Cir.2002); *Farias v. Instructional Sys., Inc.,* 259 F.3d 91, 97 (2d Cir.2001); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 764 (2d Cir.1998); *see also Anderson,* 477 U.S. at 261 n. 2. Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992) (quoting *H.L. Hayden Co. of New York, Inc. v. Siemans Med. Sys. Inc.,* 879 F.2d 1005, 1011 (2d Cir.1989)).

In the present case, a review of the record shows that there is no genuine issue of any material facts and that therefore, the Defendant, the moving party, is entitled to a judgment as a matter of law, FED. R. CIV. P. 56(c), and Plaintiffs' cross-motion for summary judgment must be denied.

### C. *Plaintiffs' Causes of Action*

#### 1. *False Arrest and False Imprisonment*

To successfully establish a cause of action for false arrest and false imprisonment, each Plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged ." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995) (citations omitted); *Boose v. Rochester,* 421 N.Y.S.2d 740, 745 (N.Y.App. Div 1979). Probable cause is a complete defense to the claims of false arrest and false imprisonment. *Bernard v. U.S.,* 25 F.3d 98, 102 (2d Cir.1994). The burden is on the Defendant to show the existence of probable cause as an affirmative defense. *Broughton v. State of New York, et. al.,* 37 N.Y.2d 451, 458 (1975).

**\*4** Defendant is entitled to summary judgment on the claims of false arrest and false imprisonment because he had probable cause to arrest the Plaintiffs. Under the Fourth Amendment, a police officer must have probable cause to arrest an individual without an arrest warrant. *Beck v. Ohio,* 379 U.S. 89, 91 (1964). A constitutionally valid arrest turns upon whether the police had the requisite "facts and circumstances within their knowledge ... to warrant a prudent man in believing that the [individual] [has] committed or was committing an offense." *Id.* It is undisputed that on May 1, 2003, the Defendant entered Room 308 pursuant to a search warrant issued by a Village of Airmont Justice Court Judge. Def's Statement at ¶ 12; Pls' Statement at ¶ 12. It is also undisputed that the Plaintiffs were present in the room when the search warrant was executed. Def's Statement at ¶ 16; Pls' Resp. at ¶ 16. Once in the room, the Defendant seized several transparent zip lock bags that were identified via field testing as containing cocaine and marijuana, an electronic scale, and a large quantity of U.S. currency. [3] Def's Statement at ¶ 17. Moreover, the Task Force's confidential informant reported that a drug transaction had occurred in Room 308 in the Plaintiffs' presence just prior to the officers' execution of the search warrant. Defendant's Affirmation in Reply and in Opposition to Plaintiffs' Cross-Motion for Summary Judgment ("Def's Opp'n Statement"), Ex. C.

[3]     The Plaintiffs correctly point out that there is an inconsistency in the Defendant's testimony regarding the location of the currency seized from Room 308. *Compare* Pls' Statement Ex. 9 at 7 (grand jury testimony of Defendant that U.S. currency recovered from clothing found within Room 308), *with* Pls' Statement Ex. 15 at ¶ 4 (Defendant's affadavit stating that money recovered from tabletop in corner of Room 308). This discrepancy, however, is of no value to the Plaintiffs because the issue surrounding the currency's location within Room 308 is not a material fact. In order for a fact to be material, and thus meaningful for this court to examine on a motion for summary judgment, the fact must alter or possibly alter the outcome of the case. *Anderson,* 477 U.S. at 248. Immaterial facts have no bearing on this court in deciding a motion for summary judgment. *Celotex Corp,* 477 U.S. at 323.

Moreover, Plaintiff Voegeler's grand jury testimony and Plaintiff Kiechle's depositions are not without inconsistency either. Plaintiff

Vogeler claims that Plaintiff Kiechle was driving on the evening of May 1, 2003. *See* Pls' Statement Ex. 8 at 5, lines 12-14; *see also* Pls' Statement Ex. 12 at 10-11, lines 25-1. Plaintiff Kiehcle, however, claims Plaintiff Vogeler was driving on the night of May 1, 2003. *See* Pls' Statement Ex. 11 at 13 lines 16-24. While this inconsistency does not go to a material fact either, it is worth noting that neither Plaintiffs' nor Defendant's statements are wholly consistent.

The presence of illegal narcotics within Room 308, as well as the information relayed by the confidential informant, gave the Defendant sufficient probable cause to arrest the room's occupants based upon the suspicion that they committed or were committing a criminal offense. *See Beck,* 379 U.S. at 91; *Provost v. City of Newburgh,* 262 F.3d 146, 157 (2d Cir.2001). Defendant's motion for summary judgment on the Plaintiffs' claim of false arrest and false imprisonment must be granted therefore, because the Defendant had probable cause to arrest them. *Broughton,* 37 N.Y.2d at 458.

Defendant cites to N.Y. PENAL LAW § 220.25(2) (Consol.2005) as additional support for his argument that he had sufficient probable cause to arrest the Plaintiffs subsequent to the search warrant's execution. N.Y. PENAL LAW § 220.25(2) provides, in part,

> [t]he presence of a narcotic drug, narcotic preparation, marihuana or phencyclidine in open view in a room, other than a public place, under circumstances evincing an intent to unlawfully mix, compound, package or otherwise prepare for sale such controlled substance is presumptive evidence of knowing possession thereof by each and every person in close proximity to such controlled substance at the time such controlled substance was found....

New York's statutory constructive possession presumption, however, is subsidiary to the primary establishment of probable cause to arrest the Plaintiffs stemming from the Defendant's seizure of illegal narcotics from the hotel room

in which they were located. Thus, the contentions Plaintiffs raise regarding their awareness of narcotics in plain view and their personal proximity to the narcotics are of no issue. [4] The Plaintiffs' presence in Room 308 during an illegal narcotics distribution, as well as their presence in the room when illegal narcotics were seized, provided the requisite probable cause to substantiate their arrest.

[4]      Plaintiffs assert that they were unaware of the presence of illegal narcotics within Room 308. Pls' Statement at ¶ 10. Their subjective awareness and proximity to the narcotics, however, is of no importance in this instance because the Defendant had probable cause to arrest the Plaintiffs upon the seizure of illegal narcotics from the room. *See, e.g. Maryland v. Pringle,* 540 U.S. 366, 374 (2003) (holding officer had probable cause to believe individual possessed cocaine and therefore could arrest individual, absent a warrant, based upon presence of narcotics and money within car).

**\*5** Because the Defendant had sufficient probable cause to arrest the Plaintiffs, I must grant the Defendant's motion for summary judgment on the Plaintiffs' false arrest and false imprisonment causes of action.

### 2. *Illegal Search and Seizure*

#### a. *Search of Plaintiffs' Persons*

Plaintiffs additionally assert that the Defendant violated their Fourth Amendment rights to be free from illegal searches and seizures when the Defendant searched their persons. Because the Defendant entered Room 308 and searched the Plaintiffs' persons pursuant to a valid search warrant, and permissibly searched their persons under the search-incident-to-arrest doctrine, the Defendant's motion for summary judgment must be granted.

In accordance with the requirements established by the United States Supreme Court, a search warrant is valid if it is issued by a neutral and disinterested magistrate upon a showing by affidavit of probable cause. *Dalia v. U.S.,* 441 U.S. 238, 255 (1979). The search warrant must also describe with sufficient particularity the location to be searched, the items to be seized, and the persons who may be searched. *Id.*

In addition to these fundamental requirements, New York courts recognize the constitutionality of an "all persons" search warrant, such as the one used here, when probable

cause exists to believe that any and all individuals found within a given location are involved in criminal activity. *Campbell v. Fernandez,* 54 F.Supp.2d 195, 197 (S.D.N.Y.1999); *People v. Nieves,* 36 N.Y.2d 396, 404 (1975). Most commonly, "all persons" search warrants are issued when the police suspect illegal narcotics trafficking or distribution from a particular location, but are unable to name the specific individuals to be searched. *See, e.g. People v. Miner,* 510 N.Y.S.2d 300, 302 (N.Y.App. Div 1987) ("all persons" search warrant valid where probable cause existed to believe area and persons involved in drug trafficking); *People v. Soler,* 460 N.Y.S.2d 537, 541 (N.Y.App.Div.1983) (search of bystander in room during execution of "all persons" search warrant valid because of suspected drug trafficking).

The Defendant entered Room 308 pursuant to a validly executed search warrant authorizing the search of "all persons" found within Room 308. Defendant's Affidavit in Support of Motion for Summary Judgment ("Def's Aff."), Ex. B. A neutral and disinterested judge issued a sufficiently particular search warrant identifying the location to be searched and the items to be seized. Def's Aff., Ex. B. The judge issued the search warrant upon receiving the Defendant's affidavit establishing probable cause. The Defendant developed probable cause to believe criminal activity was taking place within Room 308 based upon the information provided by a confidential informant working with the Task Force. A police officer may rely upon the reports of an informant to establish probable cause when the "totality of the circumstances" indicates that the informant's information is reliable and truthful. *Illinois v. Gates,* 462 U.S. 213, 238 (1983). The Defendant had reason to rely on the confidential informant's information based upon two prior successful drug transactions the informant conducted with "Nino," within Room 308, at the request of the Task Force. Def's Aff., Ex. B at ¶¶ 5 & 6. Based upon these transactions, the Defendant could conclude with sufficient probability that criminal activity was afoot in Room 308. *People v. Miner,* 510 N.Y.S.2d 300, 302 (N.Y.App. Div 1987) (two controlled purchases of illegal narcotics is sufficient evidence to establish probable cause of "activity inconsistent with innocent behavior.").

**\*6** Because the Defendant entered Room 308 and searched the Plaintiffs' person pursuant to a valid search warrant, the Defendant is entitled to summary judgment on the Plaintiffs' claims of illegal search and seizure.

In addition to the authority to search the Plaintiffs per the search warrant, the Defendant was also authorized to search the Plaintiffs' persons under the "search incident to arrest" doctrine articulated by the Supreme Court in *Chimel v. California,* 395 U.S. 752 (1969). In *Chimel,* the Supreme Court recognized that it is reasonable for a police officer to conduct a search of the arrestee's person, and the area around the aresstee's person, known as his or her wing span, even in the absence of a warrant. 395 U.S. at 763.

Naturally, *Chimel'* s search-incident to arrest doctrine only applies when there is a valid basis for an arrest. As noted, *supra,* upon entering Room 308 to execute the valid search warrant, the Defendant found several transparent zip lock bags, later identified as containing cocaine and marijuana, as well as an electronic scale and a large quantity of U.S. currency. The presence of such narcotics and drug paraphernalia within Room 308 provided the Defendant ample justification to arrest the Plaintiffs on the suspicion that they were involved in the commission of a crime. Because the Defendant had probable cause to arrest the Plaintiffs, the Defendant was authorized to search their persons upon arrest under *Chimel.*

Plaintiffs cite to *Ybarra v. Illinois,* 444 U.S. 85 (1979), in support of the proposition that the search of their persons was unconstitutional. Reliance on *Ybarra,* however, is mistaken. *Ybarra* dealt with the execution of a no-knock search warrant at a tavern. 444 U.S. at 88. The search warrant only authorized the police to search the tavern and one named suspect, the bartender. *Id.* Upon entering the tavern, however, the police frisked all persons located within the tavern, including petitioner Ybarra. *Id* . As a result of the frisk of Ybarra's person, the police seized a package of cigarettes containing heroin. *Id.* at 89.

In suppressing the evidence of narcotics possession, the Supreme Court held that each person who entered the tavern continued to hold his or her individualized Fourth Amendment right to be free from unreasonable searches and seizures. *Id.* at 91. The Court noted that "a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Id.* The Court held that the reasonable suspicion required to frisk each occupant of the tavern could not be extrapolated from the probable cause supporting the issuance of the search warrant. *Id.*

The present situation, however, is markedly different from the one posed in *Ybarra.* Unlike *Ybarra,* where the search warrant

only authorized the search of the premises and one individual, here, the Defendant entered Room 308 with a search warrant authorizing him to search "[a]ll persons found within [Room 308 of the Wellesley Inn]." Def's Aff., Ex. B. Additionally, upon entry, the Defendant seized several clear bags containing illegal narcotics from a table located towards the back of the room. Pls' Statement Ex. 6 at 6-7, lines 18-4. Differing from *Ybarra,* here, illegal contraband was *first* found within the room *and then* the Defendant searched the Plaintiffs. In *Ybarra,* just the opposite was true: the initial search of the petitioner led the police to discover illegal contraband. *Cf. Md. v. Pringle,* 540 U.S. 366, 373 (2003) (noting the Fourth Amendment protection recognized in *Ybarra* does not equally apply to individuals in private locations who are in close proximity to illegal narcotics).

**\*7** Unlike *Ybarra,* in which the petitioner was frisked only because of his presence in the bar, the Plaintiffs here were arrested and searched due to the presence of illegal narcotics within the room. Additionally, the properly issued search warrant authorized the searches of the Plaintiffs' persons. Accordingly, the Defendant is entitled to summary judgment on Plaintiffs' claim of illegal search and seizure.

### b. *Strip Search*

Plaintiffs additionally assert their constitutional right to be free from illegal searches and seizures was violated when they were subjected to full body strip searches subsequent to their arrest. Plaintiffs are correct in arguing that pre-trial detainee strip searches are governed by the Fourth Amendment's reasonableness standard. *Weber v. Dell,* 804 F.2d 796, 802 (2d Cir.1986). Plaintiffs are unable, however, to establish that the Defendant was the individual who conducted the strip searches. In order for Plaintiffs to succeed on their § 1983 claim for illegal search and seizure, Plaintiffs must establish, with sufficient definiteness, the precise actor or actors who deprived them of their constitutional rights. *See Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1994) (personal involvement of defendant prerequisite to award of damages under 1983); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977) (absence of evidence of defendant's personal involvement in alleged deprivation of rights fatal to § 1983 claim against defendant). Because the Plaintiffs have not provided sufficient evidence from which a finder of fact could conclude that the Defendant conducted or oversaw the strip searches, their claim cannot survive the Defendant's motion for summary judgment.

The evidence put forth by Plaintiffs fails to identify the Defendant as the police officer who conducted the strip search. The deposition of Plaintiff Vogeler ends with the Plaintiff explicitly denying that he had "any interaction with Police Officer Colbath" on the evening of May 1, 2003. Pls' Statement Ex. 12 at 48, lines 20-22. Plaintiff Kiechle's deposition only affirms the fact that he was strip searched; at no time does the Plaintiff identify who conducted the strip search. Pls' Statement Ex. 11 at 43, lines 18-22.

Plaintiffs assert that the Defendant's name on their arrest reports establishes that the Defendant was the officer who "oversaw" their respective strip searches. Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiffs' Cross Motion for Summary Judgment ("Pls' Memo") at 12. Such a nominal assertion on the part of the Plaintiffs, without more, does not create a genuine issue of material fact. *See Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998) (a "non-moving party may not rely on conclusory allegations or unsubstantiated speculation" when attempting to establish a genuine issue of material fact). The Defendant, however, testified that his presence in Room 308 was only to serve as the evidence officer, the individual responsible for gathering any illegal contraband seized during the execution of a search warrant. Pls' Statement Ex. 6 at 6, lines 1-9. While Defendant's name is on the arrest report for both Plaintiffs, Pls's Statement Ex. 2 and Ex 4, absent more specific evidence upon which a jury could find that the Defendant administered or oversaw the challenged strip searches, this court must grant the Defendant's motion for summary judgment on the claim of unconstitutional strip searches.

### 3. *Malicious Prosecution*

**\*8** Plaintiffs also assert a claim of malicious prosecution. The elements of malicious prosecution in New York are: "(1) the defendant commenced or continued a criminal proceeding against plaintiff, (2) the proceeding terminated in plaintiff's favor, (3) there was no probable cause for the criminal proceeding, and (4) the defendant initiated the criminal proceeding out of malice." *Bernard v. U.S., et al.,* 25 F.3d 98, 104 (2d Cir.1994) (citation omitted). Some type of judicial proceeding must occur prior to the complained of deprivation of rights because the "essence of malicious prosecution is the perversion of proper legal procedures." *Singer,* 63 F.3d at 117 (quoting *Broughton v. State of New York,* 37 N.Y.2d 451, 457 (1975)). Generally, the required judicial proceeding is in the form of a warrant, an arraignment, or an indictment by a Grand Jury. *Singer,* 63 F.3d at 117. A claim

for malicious prosecution cannot survive summary judgment absent evidence of bad faith or malice on the part of the police. *Bernard,* 25 F.3d at 104..

In the present case, the Defendant served as the affiant for the search warrant leading to the arrest and search of the Plaintiffs' persons. Pls' Statement at Ex. 7. Plaintiffs were subsequently charged with Criminal Possession of a Controlled Substance in the Third Degree, N.Y. PENAL LAW § 220.16(1) (Consol.2005), and Unlawful Possession of Marijuana, N.Y. PENAL LAW § 221.05 (Consol.2005). Akin to the absolute probable cause defense Defendant can raise to the false arrest and false imprisonment claim, and the illegal search and seizure claim, Defendant is also entitled to summary judgment on the malicious prosecution charge because he acted pursuant to probable cause. *Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir.2003). As explained, *supra,* Defendant had probable cause to believe that criminal activity was conducted within Room 308 of the Wellesley Inn based upon the information provided by the confidential informant. *See supra,* Sections (C)(1) and (C)(2). Using this information, the Defendant validly obtained a search warrant. Upon entry into Room 308, the Defendant seized several bags of illegal narcotics, including cocaine and marijuana, arrested the Plaintiffs, and conducted a valid search of their persons. As such, the Plaintiffs cannot establish that the Defendant acted without the requisite probable cause necessary to establish a successful claim of malicious prosecution.

Moreover, Plaintiffs have asserted no evidence of actual malice on the part of the Defendant. Evidence of actual malice is required to establish an actionable claim for malicious prosecution. Such evidence can be inferred from a lack of probable cause, *Sulkowska v. City of New York,* 129 F.Supp.2d 274, 295 (S.D.N.Y.2001), by proof of the defendant's recklessly or grossly negligent conduct, *Boose v. Rochester,* 421 N.Y.S.2d 740, 749 (N.Y.App.Div.1979), or by some evidence that the Defendant had an improper motive for initiating the proceedings, *Hernandez v. City of Rochester,* 260 F. Supp 2d 599, 615 (W.D.N.Y.2003).

 **\*9** In this case, actual malice cannot be inferred from the lack of probable cause because the Defendant had the requisite probable cause to believe Room 308 was being used for criminal purposes, to arrest the Plaintiffs, and to search their persons. Plaintiffs' only offer of evidence of Defendant's actual malice is a taunt, attributed to the Defendant by Plaintiff Kiechle, upon the Plaintiffs' arrest. Pls' Statement Ex. 11 at 28, lines 7-12 (unidentified member of the Task

Force told Plaintiffs they "were in trouble," upon arrest. This statement, alone, neither establishes actual malice, nor evinces bad faith on the part of the Defendant required for a successful malicious prosecution cause of action.[5] *Hernandez,* 260 F.Supp.2d. at 615 (absence of evidence of improper motive fatal to malicious prosecution claim on summary judgment).

[5]     Further supporting Defendant's motion for summary judgment is the fact that this statement is not even firmly attributed to the Defendant. *See* Pls' Statement Ex 11 at 28, lines 7-12.

Because the Plaintiffs have failed to establish evidence of the required actual malice for a successful malicious prosecution claim, and because the Defendant had probable cause to obtain a search warrant and arrest the Plaintiffs, Defendant's motion for summary judgment on the Plaintiffs' malicious prosecution claim is granted.

### 4. *Excessive Force*

Unlike Plaintiffs' three other causes of action, Plaintiffs' claim for excessive force does not turn on whether the Defendant acted upon the requisite degree of probable cause, but whether the Defendant's conduct was "objectively reasonable" in light of the facts and circumstances as presented to the Defendant at the time of the Plaintiffs' arrest. *Graham v. Connor,* 490 U.S. 386, 397 (1989) (quoting *Scott v. U.S.,* 436 U.S. 128, 137-139 (1978)). In order to succeed on a claim of excessive force, the Plaintiffs must put forth evidence that the Defendant's conduct was "objectively sufficiently serious or harmful...." *U.S. v. Walsh,* 194 F.3d 37, 50 (2d Cir.1999). Generally, the force used by the Defendant must be more than de minimis in order for the Plaintiffs' claim to be actionable. *Graham,* 490 U.S. at 397; *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993). Finally, Plaintiffs must also allege, and support with evidence, the personal involvement of the Defendant in the actions underlying their claim. *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (personal involvement of Defendant is predicate for award for damages under § 1983).

Plaintiffs base their excessive force claim upon two separate instances during the course of their arrest. First, Plaintiffs claim they were both subjected to tight handcuffing when arrested. Pls' Memo. at 13. Second, Plaintiffs claim they were lifted and dragged off the ground by their arms when their hands were cuffed behind their backs. *Id.* Like their other claims, because the record does not establish a genuine issue

2005 WL 2482549

of material fact, I grant Defendant's motion for summary judgment.

### a. *Tight Handcuffing*

When analyzing a claim of excessive force based upon the use of handcuffs, in addition to evidence of the fact that the handcuffs were too tight and that the Plaintiffs' requests for them to be loosened went unanswered, the court may consider the degree of injury suffered by the Plaintiffs. *Esmont v. City of New York,* 371 F. Supp 2d 202, 215 (E.D.N.Y.2005). While tight handcuffing, alone, can give rise to a cause of action under § 1983, *Simpson v. Saroff,* 741 F.Supp. 1073, 1078 (S.D.N.Y.1990), the plaintiffs must suffer some form of injury from the tight handcuffs in order for such a claim to be actionable. *Id.* (excessive force claim proper when tight handcuffing lead to bloody wrist and scarring). Though the Plaintiffs' injuries need not be severe or permanent, some injury must be asserted. *Esmont,* 371 F. Supp 2d at 215.

**\*10** Both Plaintiffs claim they were tightly handcuffed when arrested, Pls' Statement Ex. 11 at 41, lines 12-13; Pls' Statement Ex. 12 at 46 lines 9-11, and that their requests for their cuffs to be loosened went unheaded. Pls' Statement Ex. 11 at 47, lines 2-7; Pls' Statement Ex. 12 at 46, lines 9-20. Despite these complaints, Plaintiff Kiechle testified that he was neither injured nor hurt during the course of arrest. Pls' Statement Ex. 11 at 41, lines 66-67. Plaintiff Vogeler also testified that he was not hurt during the course of his arrest. Pls' Statement Ex. 12 at 46, lines 21-23 and Ex. 12 at 47, lines 6-10. Neither Plaintiffs' testimony establishes they suffered any harm, let alone any measurable harm. Unlike prior excessive force cases where plaintiffs have survived summary judgment by putting forth evidence of bleeding and scarring, *Simpson,* 741 F. Supp at 1078, or prolonged bruising, *Robinson v. Via,* 821 F.2d 913 (2d Cir.1993), the Plaintiffs' mere claims of minor discomfort do not establish a triable issue that can withstand Defendant's motion for summary judgment. *Esmont,* 371 F.Supp.2d. at 215 (quoting *Carter v. Morris,* 164 F.3d 215, 219, n. 3 (4th Cir.1999)).

### b. *Handling of the Plaintiffs' Persons*

Plaintiffs also claim that they were lifted off the ground by their arms while lying handcuffed face down on the ground. Pls' Statement Ex 11 at 68, lines 16-24; Pls' Statement Ex. 12 at 47, lines 8-10. This claim, however, suffers from many of the same defects that the Plaintiffs' other causes of action suffer. Plaintiffs have neither provided sufficient evidence to establish that the Defendant was personally involved in the

excessive force, *Hernandez,* 341 F.3d at 144, nor have they proven that they suffered any injury from the complained-of activity. *Esmont,* 371 F.Supp.2d. at 215. As such, the Plaintiffs fail to establish a triable issue of fact that can survive Defendant's motion for summary judgment.

While both Plaintiffs complain of being lifted from the ground while handcuffed, Pls' Statement at ¶ 3, neither Plaintiff has identified the offending officer. Both Plaintiffs' depositions are replete with generic references to "the officers," and allusions to multiple police officers being present during the course of their arrest. *See, e.g.* Pls' Statement Ex. 11 at 28; Pls' Statement Ex. 12 at 22, 47. Plaintiff Kiechle is unable to identify the police officer or officers that physically handled him that evening. Pls' Statement Ex. 11 at 66. Likewise, Plaintiff Vogeler cannot recall any police officer exhibiting any "vicious propensities" or using excessive force during the course of the arrest. Pls' Statement Ex. 12 at 33-34, lines 25-7. Most explicit, Plaintiff Vogeler claims he had no personal interaction with the Defendant on the night of his arrest, May 1, 2003. Pls' Statement Ex. 12 at 48, lines 20-22. [6]

[6]
> In fact, this is the only time the Defendant is mentioned by name during the course of either Plaintiffs' deposition. Though having no legal significance, it is interesting to note that the only reason the Defendant's name appears anywhere in the course of either Plaintiffs' deposition provided to the court is because it was brought up by Mr. Specht, an attorney for the Town of Ramapo.

Assuming, *arguendo,* that Plaintiffs could establish that the Defendant was the individual who physically lifted them from the ground, the Defendant's actions would be assessed against the Fourth Amendment's reasonableness standard. *Saucier v. Katz,* 533 U.S. 194, 204 (2001); *Graham v. Connor,* 490 U.S. 386, 397 (1989). Under this standard, the police have the latitude to "use some degree of physical coercion or threat thereof" to effectuate an arrest. *Graham,* 490 U.S. at 396. Factors that a court may consider when evaluating an excessive force claim include the severity of the crime, whether the suspect posed a threat to the officers, and whether the suspect was resisting or attempting to evade arrest. *Id.*

**\*11** In their motion for summary judgment, Plaintiffs employ the tautological argument, "no use of force was permitted because none was required." Pls' Mem. at 13. The standard articulated by the Supreme Court, however, is not whether force was required, but rather whether the use of

force was reasonable under the circumstances as presented to the officers at the time of arrest. *Graham,* 490 U.S. at 396. As has been quoted numerous times when assessing excessive force causes of action, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal citations omitted).

Plaintiffs' claim that the Defendant exerted "gratuitous and unnecessary" force during the course of their arrest cannot withstand Defendant's motion for summary judgment. While Plaintiffs may have been lifted in an unconventional manner, they have failed to show that such action was any more than de minimis force exerted during the course of an arrest following the raid of a suspected drug trafficking locale. *See, e.g. Roundtree v. N.Y.,* 778 F. Supp 614, 622-23 (E.D.N.Y.1991) (defendant's motion for summary judgment on claim of excessive force proper when plaintiff suffered no physical injuries and required no medical attention); *but see, Maxwell v. City of New York,* 380 F.3d 106, 109 (2d Cir.2004) (allowing an excessive force claim to survive defendant's

motion for summary judgment when plaintiff suffered from post-concussive syndrome).

Because the Plaintiffs have failed to produce the requisite proof required to establish a "genuine issue of material fact" regarding their claims of excessive force against the Defendant, the Defendant's motion for summary judgment on the claim for excessive force must be granted.

*CONCLUSION*

For the foregoing reasons, I grant the Defendant's motion for summary judgment in its entirety. Accordingly, I deny the Plaintiffs' cross-motion for summary judgment.

SO ORDERED

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 2482549

---

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 607341
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul CIPRIANI, Plaintiff,
v.
Harry C. BUFFARDI, Sheriff; Schenectady
County Jail; Cheryl Clark, M.D.;
Kevin J. O'Connor, Defendants.

No. 9:06-CV-0889(LEK/DRH).
|
Feb. 20, 2007.

**Attorneys and Law Firms**

Paul Cipriani, Plaintiff, pro se.

***DECISION and ORDER***

LAWRENCE E. KAHN, U.S. District Judge.

**\*1** Presently before the Court is an amended complaint filed by Plaintiff Paul Cipriani ("Plaintiff"). Amended Compl. (Dkt. No. 10). This amended complaint was submitted in compliance with the Memorandum-Decision and Order issued by this Court on November 27, 2006 ("November Order"). Mem.-Decision and Order (Dkt. No. 7).

In its November Order, the Court advised plaintiff that he must set forth facts demonstrating that Defendants were personally involved in a violation of Plaintiff's rights. *Id.* at 4. Plaintiff was also advised that in order to establish the liability of a municipality, he must allege a custom or policy which is the moving force behind the violation. *Id.*

In his amended complaint, Plaintiff names thirteen defendants and asserts numerous claims against them arising from his confinement at Schenectady County Jail. Amended Compl. (Dkt. No. 10).

The Court notes that plaintiff has not named "Schenectady County Jail," "Cheryl Clark," or "Kevin J. O'Connor" in his amended Complaint. Therefore, "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are hereby dismissed as defendants in this action.

The Court also notes that Plaintiff's amended Complaint mentions "Mr. Booth" and "Mr. Purdy" only in the caption, and fails to allege any act or omission by these individuals. Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff. *Gonzalez v. City of New York,* No. 97 CIV. 2246(MGC), 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96 CIV. 3895(MGC), 1998 WL 118169, at \*1 (S.D.N.Y.Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement) and *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)). Because plaintiff has failed to allege any personal involvement on the part of defendants "Mr. Booth" and "Mr. Purdy", they are hereby dismissed as defendants in this action.

In his amended Complaint, Plaintiff alleges that the remaining Defendants committed various violations of his constitutional rights, including inadequate medical care, breach of doctor-patient confidentiality, excessive force, denial of due process in a disciplinary proceeding, and interference with the grievance process. Amended Compl. (Dkt. No. 10).

Based on the foregoing, Plaintiff's amended complaint as against the remaining Defendants is accepted for filing.

Plaintiff is advised, however, that the U.S. Marshals cannot effect service on a "John Doe" defendant. In the event that plaintiff wishes to pursue this claim against the "John Doe" defendants named in the amended Complaint, he must take reasonable steps to ascertain their identities. Plaintiff may then file a Motion to amend his complaint and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. Plaintiff is further advised that if these individuals are not timely served, the action will be against them will be dismissed.

**\*2** WHEREFORE, it is hereby

**ORDERED,** that "Mr. Booth," "Mr. Purdy," "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are **DISMISSED** as defendants in this action, and it is further

**ORDERED,** that the Clerk revise the docket to add "Schenectady County," "Mr. Burns," "Mr. Jones," "Mr. Adams," "Ms. Jones," "Ms. Hull," "John Doe # 1," "John Doe # 7," "John Doe # 10," and "Loraine Walker" as defendants in this action, and it is further

Cipriani v. Buffardi, Not Reported in F.Supp.2d (2007)

2007 WL 607341

**ORDERED,** that the Clerk issue summonses naming the remaining defendants and forward them, along with copies of the amended Complaint (Dkt. No. 10), to the United States Marshal for service upon the defendants, together with a copy of this Order.[1]  The Clerk shall also forward a copy of the summons and amended Complaint by mail to the County Attorney for Schenectady County, together with a copy of this Order, and it is further

[1]    Plaintiff was granted leave to proceed with this action *in forma pauperis.* Mem.-Decision and Order (Dkt. No. 7).

**ORDERED,** that a formal response to Plaintiff's amended Complaint be filed by Defendants or their counsel as provided for in Rule 12 of *the Federal Rules of Civil Procedure* subsequent to service of process on Defendants, and it is further

**ORDERED,** that Plaintiff take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his complaint and add such individuals, by name, as defendants to this lawsuit, and it is further

**ORDERED,** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States

District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. *Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.* Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned Magistrate Judge with proper allowance for notice as required by the Rules. *Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.* All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 607341

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 2868231
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Quentin LA GRANDE, Plaintiff,

v.

TOWN OF BETHLEHEM POLICE
DEPARTMENT, et al., Defendants.

No. 1:08–CV–0738 (LEK/DRH).
|
Sept. 1, 2009.

**Attorneys and Law Firms**

Quentin La Grande, Albany, NY, pro se.

Nannette R. Kelleher, Bailey, Kelleher Law Firm, Albany, NY, for Defendants.

***DECISION AND ORDER***

LAWRENCE E. KAHN, District Judge.

**\*1** Plaintiff *pro se* Quentin La Grande ("Plaintiff" or "La Grande") commenced the instant action against Defendants Robert Helligrass [1], Stephen Kraz [2] and the Town of Bethlehem Police Department (collectively, "Defendants") pursuant to 42 U.S.C. § 1983. Complaint (Dkt. No. 1). Presently before this Court is Defendants' Motion to dismiss (Dkt. No. 13) and Plaintiff's Motion for summary judgment (Dkt. No. 12). For the following reasons, Defendants' Motion to dismiss is granted and Plaintiff's Motion for summary judgment is denied.

[1]    Incorrectly named in the Complaint as "R.J. Helliergrass." *See generally* Complaint (Dkt. No. 1).

[2]    Incorrectly named in the Complaint as "William Craz." *See generally* Complaint.

**I. BACKGROUND**

According to Plaintiff, "[o]n April 1, 2008 I was threaten by Patrol Officer William Craz. Patrol Officer called me a 'Nigger,' and also threaten to cause bodily harm to me. On April 2, 2008 I met with Seargent R.J. Helliergrass and was

interogated, and racial harrassed. On or about April 5, 10, 15, May 6, 8, 10, 15, and June 6, 2008, I have been followed by the Bethlehem Police Department." Compl. at 2. Plaintiff's jurisdictional statement asserts that the Complaint is being brought pursuant to 42 U.S.C. § 1983. *Id.* at 1.

In lieu of filing an answer, on March 11, 2009, Defendants filed the Motion to dismiss presently before the Court. Mot. to Dismiss (Dkt. No. 13). Plaintiff also filed a Motion for summary judgment on February 24, 2009, which is now before the Court. Mot. for Sum. Judg. (Dkt. No. 12).

**II. DISCUSSION**

**A. Defendants' Motion to Dismiss**

**a. Standard of Review**

In order to withstand a motion to dismiss, "a [pleading] must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A party must plead with such factual detail so as to sufficiently " 'nudge [ ][its] claims ... across the line from conceivable to plausible.' " *Iqbal,* 129 S.Ct. at 1950–51 (quoting *Twombly,* 550 U.S. at 570). While stating a claim does not require the recitation of detailed factual allegations, it does, however, require facts sufficient to state a claim to relief that is *prima facie* plausible. *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 555). The Court must accept the allegations in the well-pleaded complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and draw all inferences in favor of the non-moving party. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1973); *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 154 (2d Cir.2006); *King v. Am. Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002).

In assessing the legal sufficiency of the Complaint, the Court is mindful that La Grande is a *pro se* litigant and his submissions are subject to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The Court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999); *see Hemphill v. New York,* 380 F.3d

680, 687 (2d Cir.2004) (" "It is well-established that 'when a plaintiff proceeds *pro se* the court is obligated to construe his pleadings liberally, particularly when they allege civil rights violations' ") (quoting *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004)). However, a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983).

### b. Analysis

**\*2** Defendants move to dismiss Plaintiff's Complaint in its entirety pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure.[3] Mot. to Dismiss (Dkt. No. 13) at 1. Defendants specifically argue that all causes of action against the Town of Bethlehem Police Department must be dismissed as it is not a legal entity subject to suit under 42 U.S.C. § 1983 and further that Plaintiff's entire Complaint should be dismissed for failing to state a cause of action. *Id.* at 4.

[3]    Defendants argue, alternatively, that Plaintiff's Complaint should be dismissed pursuant to 28 U.S.C. § 1915(e) and for failing to adhere to Rule 8(a) of the Federal Rules of Civil Procedure. The Court need not address these arguments as it is dismissing Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

### i. Town of Bethlehem Police Department

The Town of Bethlehem moves to dismiss Plaintiff's Complaint on the ground that it is not susceptible to suit under 42 U.S.C. § 1983. While a municipality may be susceptible to suit under 42 U.S.C. § 1983, a municipal police department is not. *See Walker v. Waterbury Police Dep't.,* 08–cv–959 (JG)(AKT), 2009 U.S. Dist. LEXIS 7933, at \*5, 2009 WL 261527 (E.D.N.Y. Feb. 4, 2009). "Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Id.* (citing *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002)). Accordingly, claims asserted under 42 U.S.C. § 1983 will be dismissed against a municipality's police department. *See Walker,* 2009 U.S. Dist. LEXIS 7933, at \*5, 2009 WL 261527 (internal citation omitted); *see also Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

Here, Plaintiff has sued the Town of Bethlehem Police Department along with two individual officers of the

department. *See generally* Compl. Plaintiff's Complaint asserts that it is brought pursuant to 42 U.S.C. § 1983 and does not provide any other basis for the claims. *Id.* at 1. Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, Plaintiff's Complaint is dismissed as against the Town of Bethlehem Police Department.

Even assuming *arguendo* that Plaintiff's claims against the Town of Bethlehem Police Department can be construed as a claim against the Town of Bethlehem, Plaintiff's Complaint would still be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

In order to state a cause of action for municipal liability under 42 U.S.C. § 1983, "a plaintiff must allege that the municipality has adopted a custom or policy which is the moving force behind the [alleged constitutional violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 649 (N.D.N.Y.1997). A municipality cannot be held liable on the basis of *respondeat superior* and "a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Campanaro v. City of Rome,* 999 F.Supp. 277, 281 (N.D.N.Y.1998); *see also Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993).

Plaintiff's Complaint is devoid of any allegations that the Town of Bethlehem had a policy or custom of violating constitutional rights, nor does plaintiff allege or even allude that the Town was deliberately indifferent to his constitutional rights. The complete failure to plead such warrants dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as the Complaint fails to state a cause of action for which relief can be granted under 42 U.S.C. § 1983. *See Campanaro,* 999 F.Supp. at 281; *Dwares,* 985 F.2d at 100.

### ii. Defendants Kraz and Helligrass

**\*3** La Grande's Complaint alleges that between April and June 2008, he was "racially harassed," "threatened" and "interrogated" by Defendants Kraz and Helligrass, two officers of the Bethlehem Police Department. Compl. at 2. Specifically, La Grande alleges that on multiple occasions the officers addressed him with a racial epithet and followed him through town. *Id.* It is well settled in this Circuit that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Murray v. Pataki,* No. 9:03–cv–1263, 2007 U.S. Dist. LEXIS 26959, at \*22, 2007 WL 956941 (N.D.N.Y. Mar. 29, 2007) (Kahn, J.) (quoting *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003)) (collecting cases).

"[V]erbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Murray,* 2007 U.S. Dist. LEXIS, at * 22 (quoting *Moncrieffe v. Witbeck,* 2000 U.S. Dist. LEXIS, at *3, 2000 WL 949457 (N.D.N.Y. June 29, 2000)); *see also Zeno v. Cropper,* 650 F.Supp. 138, 141 (S.D.N.Y.1986) ("vile and abusive language ... no matter how abhorrent or reprehensible cannot form the basis for a § 1983 claim) (internal citation and quotation omitted). Further, "threats do not amount to violations of constitutional rights." *Murray,* 2007 U.S. Dist. LEXIS, at *23 (quoting *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995)).

In this case, Plaintiff's claim for verbal harassment in the form of racial slurs and threats is not actionable under § 1983 and, therefore, fails to state a claim entitled to relief. Compl. at 2.

**B. Plaintiff's Motion for Summary Judgment**

Even assuming *arguendo* that this Court did not grant Defendants' Motion to dismiss, Plaintiff's Motion for summary judgment would still be denied. Under the Local Rules, *"all* motions ... require a memorandum of law, supporting affidavit, and proof of service on all the parties." N.D.N.Y. L.R. 7.1(a) (emphasis added). "All memoranda of law shall contain a table of contents and, wherever possible, parallel citations." *Id.* at 7 .1(a)(1). Further "[a]ny motion for summary judgment shall contain a Statement of Material Facts ... *Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." Id.* at 7 .1(a)(3) (emphasis in original).

Here, not only did the Plaintiff fail to submit a memoranda of law in support of his Motion for summary judgment and an affidavit but he also failed to submit a Statement of Material Facts. In fact, in his Motion for summary judgment filed on February 24, 2009, Plaintiff explicitly stated, "I will provide this Court with a 'Law Memorandum' in support of my motion; such will contain applicable law, and case law. I will submit this to the Court on or before March 6, 2009." Mot. for Sum. Judg. at 1. To date, this Court has nor received said memorandum of law. While this Court recognizes Plaintiff's *pro se* status, he has failed to comply with *all* of the Local Rules. *See Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983) (a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law"). Accordingly, Plaintiff's Motion for summary judgment

is denied for failing to comply with the relevant rules of procedure. *See, e.g.,* N.D.N.Y. L.R. 7.1(a), 7.1(a)(3).

**C. Amended Complaint**

**\*4** Plaintiff also moves to amend his Complaint. Response (Dkt. No. 27). While *pro se* litigants are generally afforded wide latitude and an opportunity to amend, a District Court need not permit an amendment to a Complaint where it would be futile. *See Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (holding that although leave to amend should be freely given where justice so requires, a district court need not grant leave if amendment would be futile); *Acito v. Imcera Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995).

Here, Plaintiff's Complaint does not state any viable causes of action under 42 U.S.C. § 1983. Further, Plaintiffs Complaint does not state which, if any, of his constitutional rights were violated by Defendants nor does it plead any facts to establish municipal liability. Plaintiff's Complaint also does not plead any facts supporting his allegations that he was "racially harassed," "threatened" or "interrogated." Since, as the Court discussed above, none of the complained of actions provides the basis for a cognizable cause of action, leave to cure these defects would be futile. These deficiencies may have been excusable, albeit not cureable, had this Court not previously informed Plaintiff of the requirements for pleading a cause of action under 42 U.S.C. § 1983 against a municipality. *See La Grande v. Albany Police Dep't,* 1:07–CV–757 (Dkt. No. 4). [4] Given that leave to amend would be futile, this Court denies Plaintiff's request.

[4]     Notably, Plaintiff has also filed numerous Complaints in the Northern District, many of which include assertions of civil rights violations and racial discrimination or harassment, wherein Plaintiff has been granted leave to amend his complaints. Plaintiff has filed eleven suits in the Northern District since 2000, including the instant matter. In fact, on May 12, 2008, Chief United States District Judge Norman A. Mordue entered an order enjoining Plaintiff from filing any further actions or pleadings in this district without the prior permission of the Chief Judge. Dkt. No. 6. This Order was entered based on a record of vexatious and frivolous pleadings previously filed by La Grande.

2009 WL 2868231

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that Defendants' Motion to dismiss (Dkt. No. 13) is **GRANTED in its entirety;** and it is further

**ORDERED,** that Plaintiff's request to amend his Complaint (Dkt. No. 27) is **DENIED;** and it is further

**ORDERED,** that Plaintiff's Motion for summary judgment (Dkt. No. 12) is **DENIED in its entirety;** and it is further

**ORDERED,** that the Clerk serve a copy of this Decision and Order on all parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2868231

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

---

2012 WL 4052286
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Sylvia JENKINS, Plaintiff,
v.
Mr. LIADKA, Syracuse Police Officer; Mr. Sands,
Syracuse Police Officer; John Doe, Syracuse Police
Officer; and Syracuse Police Dep't, Defendants.

No. 5:10–CV–1223 (GTS/DEP).
|
Sept. 13, 2012.

**Attorneys and Law Firms**

Sylvia Jenkins, Syracuse, NY, pro se.

Hon. Mary Anne Dougherty, Corporation Counsel for
City of Syracuse, Catherine Ena Carnrike, Esq., Assistant
Corporation Counsel, of Counsel, Syracuse, NY, for
Defendants.

### *MEMORANDUM–DECISION and ORDER*

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Sylvia Jenkins ("Plaintiff") against Mr. Liadka,
Mr. Sands, John Doe, and Syracuse Police Department
("Defendants"), is Defendants' motion to dismiss Plaintiff's
Complaint for insufficient service of process pursuant to
Fed.R.Civ.P. 12(b)(5) and/or for failure to state a claim
pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 13.) For the
reasons set forth below, Defendants' motion is granted in part
and denied in part.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

Generally, construed with the utmost of special liberality,
Plaintiff's Complaint asserts three claims against Defendants
arising from an investigatory stop in September 2010, in
Syracuse, New York: (1) a claim that three Syracuse Police
Officers unreasonably searched her in violation of the Fourth
Amendment; (2) a claim that they unlawfully seized, and
failed to return, her personal property in violation of the

Fourth, Fifth, and/or Fourteenth Amendments; and (3) a claim
that they subjected her to excessive force in violation of
the Fourth Amendment. (*See generally* Dkt. No. 1 [Plf.'s
Compl].)

Generally, in support of these claims, Plaintiff alleges as
follows: (1) on the evening of September 9, 2010, she was
stopped on Butternut Street in the City of Syracuse by
two officers, who questioned her regarding a call they had
received; (2) when she told the two police officers that she
did not know what they were talking about and "attempted
to go on about [her] business," the officers became "uptight,
rude, [and] abnormal in their conversations [and] behavior,"
and threatened her; (3) the officers then proceeded to conduct
a search of "all [of Plaintiff and her] personal property,"
and, in the process of doing so, twisted her arm and forced
her onto the front of their police vehicle; (4) a third police
officer arrived, and she was assaulted by all three officers
(hereinafter "Defendants"), who hit her on the back and threw
her onto the police vehicle; (5) following the deprivation on
September 9, 2010, Defendants denied her a post-deprivation
remedy through a combination of threats, intimidation and/
or nonresponsiveness; and (6) Defendants took these actions
against her intentionally because they did not personally like
her, given her previous interactions with the Syracuse Police
Department. (*Id.*)

Plaintiff further alleges that, as a result of this incident,
she suffered various injuries and losses, including (1) a
"tremendous setback in already trying to recover in an [sic]
grave overall manner of my life [and] lifestyle involving
officials internally [and] externally," (2) head and back pain,
and mental suffering, (3) loss of personal property, and, (4)
loss of employment. (*Id.*) As relief, Plaintiff requests an award
of twelve thousand dollars ($12,000) in damages. (*Id.* at ¶ 6.)

Familiarity with the remaining factual allegations supporting
Plaintiff's three claims is assumed in this Decision and Order,
which is intended primarily for review by the parties. (*See
generally* Dkt. No. 1.)

### B. Defendants' Motion
**\*2** On May 6, 2011, Defendants filed a motion to dismiss.
(Dkt. No. 13, Attach 2.) Generally, in support of their motion,
Defendants assert the following two arguments: (1) because
the Complaint was not served within the time allowed by
Fed.R.Civ.P. 4 or Local Rule 4.1 of the Local Rules of Practice
for this Court, the Court lacks jurisdiction over Defendants in
accordance with Fed.R.Civ.P. 4; and (2) the Complaint fails

to state a claim upon which relief can be granted, because (a) the Complaint fails to identify what constitutional rights Plaintiff is attempting to vindicate, (b) even if the Complaint has sufficiently identified a constitutional violation, the Complaint fails to allege facts plausibly suggesting the personal involvement of the individual Defendants in any such constitutional violation, (c) the City of Syracuse Police Department does not have the legal capacity to be sued, (d) even if Plaintiff's Complaint can be liberally construed as attempting to assert a claim against the City of Syracuse, the Complaint fails to allege facts plausibly suggesting that the individual Defendants' actions the result of a city policy or custom sufficient to confer municipal liability upon the City, (e) the Fifth Amendment does not govern a plaintiff's deprivation-of-property claim against state actors, (f) the Complaint fails to allege facts plausibly suggesting that force was used or that if force was used it was excessive for purposes of a Fourth Amendment claim, and (g) based on Plaintiff's factual allegations, Defendants Liadka and Sands are protected from liability as a matter of law by the doctrine of qualified immunity. (*See generally* Dkt. No. 13, Attach. 2.)

On June 2, 2011, Plaintiff filed a response to Defendants' motion. Generally, Plaintiff's response, which is handwritten and three pages in length, states that she "definitely oppose[s] [Defendants'] request" for the dismissal of her Complaint. (*See generally* Dkt. No. 17.) However, Plaintiff's response does not address the legal arguments asserted by Defendants for the dismissal of Plaintiff's Complaint. (*Compare* Dkt. No. 17 *with* Dkt. No. 13, Attach. 2.) Although Plaintiff's response was submitted two days after the expiration of the response deadline, the Court has accepted it, out of an extension of special solicitude to her as a *pro se* civil rights litigant.

In addition, Plaintiff has filed three letters to the Court on the following dates: July 6, 2011, August 22, 2011, and January 13, 2012. (Dkt. No. 18–20.) Generally, these letters contain assertions that Plaintiff believes that the police are treating her, treating her negatively, and responding unsatisfactorily to her telephone calls. (*Id.*) To the extent that these three letters are intended to constitute papers in opposition to Defendants' motion, the Court will not consider them, because (1) they are not responsive to the motion, and/or (2) they were not submitted in a timely manner. Moreover, to the extent that these three letters are intended to constitute a request for relief, the Court will not consider them, because do not state the relief sought, state with particularity the grounds for seeking the order, and attach a memorandum of law and affidavit, as required by Fed.R.Civ.P. 7(b) and Local Rule 7.1 of the Local Rules of Practice for this Court.

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Insufficient Service of Process

**\*3** Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court-on motion or its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

The Local Rules of Practice for this Court shorten the service requirements under Fed.R.Civ.P. 4. Specifically, Local Rule 4.1(b) requires "service of process upon all defendants within sixty (60) days of the filing of the complaint. This expedited service is necessary to ensure adequate time for pretrial discovery and motion practice. In no event shall service of process be completed after the time specified in Fed.R.Civ.P. 4." N.D.N.Y. L.R. 4.1(b).

### B. Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading

2012 WL 4052286

contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

**\*4** Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turning on the *conceivability* of an actionable claim,

the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id .* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [1]

[1]    It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 [internal quotation marks and

Jenkins v. Liadka, Not Reported in F.Supp.2d (2012)
Case 6:20-cv-01316-GTS-TWD   Document 10   Filed 11/30/20   Page 47 of 76
2012 WL 4052286

citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[2] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[3] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28.

[2]   See *Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N . Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

[3]   See *Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

**\*5** Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cnty.,* 12–CV–0336, 2012 WL 1977972, at \*5 (N.D.N.Y. June 1, 2012) (Suddaby, J.). Moreover, "a pro se plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of [her] complaint-to the extent those papers are consistent with the allegations in the complaint." *Planck,* 2012 WL 1977972, at \*5.

### C. Legal Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b) (3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini,* 07–CV–0279, 2009 WL 3672105, at \*1, n. 1 (N.D.N.Y.Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este–Green v. Astrue,* 09–CV–0722, 2009 WL 2473509, at \*2 & n. 3 (N.D.N.Y. Aug.7, 2009) (Suddaby, J.) (collecting cases).

### D. Legal Standards Governing Plaintiff's Claims

Because the Court has, in its Decision and Order of March 7, 2011, addressed the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not again recite, in their entirety, those legal standards in this Decision and Order, 9 which is intended primarily for review by the parties. (*See generally* Dkt. No. 5 [Decision and Order].)

### E. Legal Standards Governing Defendants' Defenses

#### 1. Defense of Lack of Separate Identity

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dept.,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002). "Pursuant to Fed.R.Civ.P. 17, New York governs the capacity of

a police department to sue or be sued. In New York, police departments like the defendant, which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the town." *Loria v. Irondequoit* 775 F.Supp. 599, 606 (W.D.N.Y.1990). While a municipality can sue or be sued, the police department, which does not exist separate from that municipality, can not. *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

### 2. Defense of Limited Municipal Liability

**\*6** It is well established that "[a] municipality may not be held liable in a Section 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior.*" [4] "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy ." [5] "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to ... prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." [6]

[4]   *Powell v. Bucci,* 04–CV–1192, 2005 WL 3244193, at *5 (N.D.N.Y. Nov.30, 2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("[A] [municipality] may not be held for the actions of its employees or agents under a theory of *respondeat superior."* ).

[5]   *Powell,* 2005 WL 3244193, at *5; *Monell,* 436 U.S. at 690–691 ("[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Batista,* 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York,* 290 F.Supp.2d 317, 321 (S.D.N.Y.2003) ("In order to establish the liability of [municipal] defendants in an action under §

1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

[6]   *Batista,* 702 F.2d at 397, *accord, Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995), *McKeon v. Daley,* 101 F.Supp.2d 79, 92 (N.D.N.Y.2000) (Hurd, J.), *Merriman v. Town of Colonie, NY,* 934 F.Supp. 501, 508 (N.D.N.Y.1996) (Homer, M.J.); *Douglas v. Cnty. of Tompkins,* 90–CV–0841, 1995 WL 105993, at *12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. Cnty. of Albany,* 594 F.Supp. 1147, 1156 (N.D.N.Y.1984) (Miner, J.).

With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating: (1) a formal policy officially endorsed by the municipality ...; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question ...; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge to the practice of policymaking officials ...; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees...." [7] With regard to the second element (causation), a plaintiff must show "a direct causal link" or "an affirmative link" between the municipal policy or custom and the alleged constitutional deprivation (i.e., that the policy or custom was the "moving force" behind the deprivation). [8]

[7]   *Dorsett–Felicelli, Inc.,* 371 F.Supp.2d 183, 194 (N.D.N.Y.2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord, Dunbar v. Cnty. of Saratoga,* 358 F.Supp.2d 115, 133–134 (N.D.N.Y.2005) (Munson, J.); *see also Clayton v. City of Kingston,* 44 F.Supp.2d 177, 183 (N.D.N.Y.1999) (McAvoy, J.) (transposing order of second and third ways, and citing five more Supreme Court cases).

[8]   *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional

Jenkins v. Liadka, Not Reported in F.Supp.2d (2012)
Case 6:20-cv-01316-GTS-TWD    Document 10    Filed 11/30/20    Page 49 of 76
2012 WL 4052286

deprivation."); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell'* s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); *Monell,* 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983. Since this case unquestionably involves official policy as the moving force of the constitutional violation [at issue] ... we must reverse the judgment below."); *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that ... an official policy or custom [was] the cause of the deprivation of constitutional rights.... [T]he plaintiff must establish a causal connection-an affirmative link-between the policy and the deprivation of his constitutional rights.") [internal quotation marks and citation omitted]; *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City."); *Powell,* 2005 WL 3244193, at *5 ("Ultimately, the plaintiff must demonstrate a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.") [internal quotation marks and citation omitted].

### 3. Defense of Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68–69 (2d

Cir.2004) [citations omitted], *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007) [citations omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable official that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

**\*7** *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) [citations omitted], *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).[9] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007) [citations omitted].[10] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).[11] As the Supreme Court has explained,

[9]
> *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v. City of Syracuse,* 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v. New York State Division of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

[10]
> *See also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)

Jenkins v. Liadka, Not Reported in F.Supp.2d (2012)
Case 6:20-cv-01316-GTS-TWD    Document 10    Filed 11/30/20    Page 50 of 76
2012 WL 4052286

("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") [citation omitted]; *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

11    *See also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

[T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley,* 475 U.S. at 341. [12]

12    *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

## III. ANALYSIS

### A. Whether Plaintiff's Complaint Should Be Dismissed for Failure to Serve Process in Timely Manner

After carefully considering the matter, the Court must answer this question in the negative. By Defendants' own calculations, Plaintiff's Complaint was served on April 18, 2011–a mere 42 days after the Court granted Plaintiff's motion to proceed *in forma pauperis,* approved the filing of her Complaint, and directed the Clerk of the Court to issue summonses and forward them with the Complaint to the United States Marshal's Service, for service on Defendants. (Dkt. No. 5 [Decision and Order filed March 7, 2011].) Indeed, Defendants acknowledge that Plaintiff completed the Civil Summonses and USM285 form, and returned them to the Clerk's Office (so that the Clerk's Office could forward them to the U.S. Marshal's Service for service of Plaintiff's Complaint) less than eight days after receiving them from the Clerk's Office. (Dkt. No. 13, Attach. 1, at ¶¶ 6–7; Dkt. No. 13, Attach. 2, at 9 [attaching page "8" of Defs.' Memo. of Law]; *see also* Dkt. Nos. 6, 8.) After that point in time, service was largely if not entirely outside of Plaintiff's control.

Under the circumstances, the Court finds that good cause exists to extend the deadline for service by 42 days. The Court notes that a contrary conclusion (e.g., a conclusion that Plaintiff had to serve her Complaint by December 13, 2010 pursuant to Local Rule 4.1, or even February 11, 2011 pursuant to Fed.R.Civ.P. 4) would render meaningless the Court's directive to the Clerk of the Court, on March 5, 2011, to take sufficient action to enable the United States Marshal's Service to effect service for Plaintiff.

### B. Whether Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

#### 1. Whether Plaintiff's Complaint Should Be Dismissed for Failing to Sufficiently Identify What Constitutional Rights She Is Attempting to Vindicate

**\*8** After carefully considering the matter, the Court must answer this question in the negative. In construing the pleadings of a *pro se* civil rights litigant in this Circuit, a district court's imagination should be limited only by the plaintiff's factual allegations, not by the legal claims set out in his or her pleadings. *See Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005) ("We leave it for the district court to determine what other claims, if any, Phillips has raised. In so doing, the court's imagination should be limited only by Phillips' factual allegations, not by the legal claims set out in his pleadings.").

Here, based on Plaintiff's (albeit scant and confused) factual allegations, the Court can imagine that she is attempting to assert the following three claims: (1) a claim of an unreasonable search under the Fourth Amendment; (2) a claim of an unlawful seizure of, and failure to return, her personal property under the Fourth, Fifth and/or Fourteenth

Amendments; and (3) a claim of excessive force under the Fourth Amendment.

### 2. Whether Plaintiff's Claims Against the Individual Defendants Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Their Personal Involvement in the Constitutional Violations Alleged

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 13 [attaching page "12" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. *See, supra,* Part III.C. of this Decision and Order. [13] Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, even when construed with the utmost of special liberality, the Complaint does not identify the precise location of the incident, which officers were responsible for violating her rights, how she suffered the head injury she alleges, what property was taken from her, and how Defendants frustrated her efforts to recover that property. *See Vogeler v. Colbath,* 04–CV–6071, 2005 U.S. Dist. LEXIS 44658, at *29, 2005 WL 2482549 (S.D.N.Y. Oct. 6, 2005) ("Plaintiffs must also allege ... the personal involvement of the Defendant in the actions underlying their claim."). [14]

[13]    Under the circumstances, the Court finds that Plaintiff had sufficient notice of the consequences of failing to respond to the arguments asserted in Defendants' motion. For example, on October 14, 2010, Plaintiff was given a courtesy copy of the District's *Pro Se* Handbook and a courtesy copy of the Local Rules of Practice for the Northern District of New York. (Dkt. No. 4.) In addition, on May 6, 2011, Defendants advised Plaintiff of her need to respond to their arguments. (Dkt. No. 15.) Also, Plaintiff had extensive experience as a *pro se* civil rights litigant in this District, before responding to the motion in question. *See, infra,* Part III.D. of this Decision and Order.

[14]    Indeed, the Court notes that one of the officers that Plaintiff lists in her Complaint has not been identified. In a prior decision by the Court, Plaintiff was ordered to take reasonable steps to ascertain the identity of the unnamed officer, immediately notify the Court, amend her complaint to include the identity of the third Defendant, and also to have that officer served. (Dkt. No. 5, at 14.) Because Plaintiff has not done so, her alleged physical injuries remain attributable to an unidentified person.

For all of these alternative reasons, Plaintiff's claims against the individual Defendants are dismissed.

### 3. Whether the Syracuse Police Department Should Be Dismissed as a Defendant

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach 2, at 13.) The Court would add only the following three brief points.

**\*9** First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, "as Plaintiff has been told several times, under New York State law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued." *Jenkins v. Onondaga Cnty. Sheriff's Dep't,* 12–CV–0855, Report–Recommendation, at 5 (N.D.N.Y. filed June 28, 2012) (Baxter, J.) (citing *Hayes v. Cnty. of Sullivan,* 07–CV–0667, 2012 WL 1129373, at *24 [S.D.N.Y. March 30, 2012]). Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant in this case. The real party in interest is the City of Syracuse itself.

For all of these alternative reasons, the Syracuse Police Department dismissed as a Defendant.

### 4. Whether, Even if the City of Syracuse Were Substituted for the Police Department, Plaintiff's Claims Against the City Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Municipal Liability

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 14–15 [attaching pages "13" and "14" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a widespread policy or custom promulgated by the municipal policy maker necessary to hold the City liable for her injuries. As indicated above in Part II.E.2. of this Decision and Order, Plaintiff must allege facts plausibly suggesting that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 639 (N.D.N.Y.1997) (Scullin, J.) (citing, *inter alia, Monell v. Dept. of Soc. Servs. of City of New York,* 436 U.S. 658, 689 [1978] ). However, Plaintiff has not alleged *any* official policy or custom adopted by the City of Syracuse or its Police Department,[15] let alone one responsible for the alleged injuries she received. Because *Monell* prohibits the finding of liability against a City when there is no causal connection between a municipal policy and a resulting injury, Syracuse City Police Department cannot be responsible for Plaintiff's alleged injuries. *Monell,* 436 U.S. at 692. As a result, the City of Syracuse cannot be maintained as a Defendant in this action, and Plaintiff's Section 1983 claims against it are dismissed.

15    In addition to not alleging facts plausibly suggesting the existence of a department-wide policy or custom, Plaintiff has not alleged facts plausibly suggesting that Officers Liadka, Sands, and the unnamed officer created or promulgated that policy, or even that they were final policymakers. "A municipal official that exercises discretion, whether it be in a constitutional or unconstitutional manner, in an area of which that official is not the final policymaker, cannot, by itself, establish municipal liability." *Clayton v. City of Kingston,* 44 F.Supp.2d 177, 184 (N.D.N.Y.1999) (McAvoy, C.J.).

**\*10** For all of these reasons, Plaintiff's claims against the City of Syracuse Police Department and/or the City of Syracuse are dismissed on this alternative ground.

### 5. Whether, in the Alternative, Plaintiff's Deprivation–of–Property Claim Should Be Dismissed to the Extent It Is Grounded on the Fifth Amendment

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 16–17 [attaching pages "15" and "16" of Defs.' Memo. of Law].) The Court would add only the following four brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, a takings claim is not ripe where a state remedy is potentially available. *Vandor Inc. v. Militello,* 301 F.3d 37, 39 (2d. Cir.2002). As the Supreme Court has explained,

> An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Police are not required to provide the owner with notice for state-law remedies, which are "established by published, generally available state statutes and case law." *City of W. Covina v. Perkins,* 525 U.S. 234, 240–241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999). "Once the property owner is informed that his property has been seized,

he can turn to these public sources to learn about the remedial procedures that are available to him. The City need not take other steps to inform him of his options." *City of W. Covina, 525 U.S. at 241.* Here, Plaintiff has not alleged facts plausibly suggesting that she attempted to recover her property in the proper manner (or even what property was taken). Fourth, and finally, Plaintiff does not allege facts suggesting that her property was taken for public use in an unconstitutional manner that would require her to be paid just compensation. Instead, Plaintiff alleges that, after she attempted to escape from their investigation and was restrained by officers, she was searched and had property taken from her.

For all of these alternative reasons, Plaintiff's deprivation-of-property claim is dismissed to the extent that it is grounded on the Fifth Amendment.

### 6. Whether, in the Alternative, Plaintiff's Excessive Force Claim Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Either that Force Was Used or that Any Such Force Was Excessive

**\*11** After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 17–18 [attaching pages "16" and "17" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as stated in the Court's Decision and Order of March 7, 2011, in evaluating a Fourth Amendment excessive-force claim, "courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." (Dkt. No. 5, at 13.) [16] Here, Plaintiff alleges the following facts, which could be construed as plausibly suggesting that, at the time the incident occurred, she had given Defendants probable cause to use the force at issue against her: (1) Defendants were dispatched to that location regarding a problem; (2) Defendants specifically chose to question Plaintiff about the incident; (3) Plaintiff was attempting to get away from Defendant when they were attempting to question her; (4) she acted in such a way as to cause Defendants to become "worked up"; (5) it became

necessary for a third unnamed officer to step in and assist Defendants Sands and Liadka in controlling Plaintiff. (Dkt. No. 1, at ¶ 4 & Attachment.) Simply stated, it is plausible, based on Plaintiff's factual allegations, that the amount of force used by the officers to pull her hands behind her back and detain her was necessary to keep her from getting away and "going about [her] business." (*Id.* at ¶ 4.) It is important to note that Plaintiff does not allege facts plausibly suggesting any physical injury other than vague "head & back pains." (*Id.* at ¶ 5.) [17]

[16]    More specifically, the standard governing constitutional excessive-force claims against government officials in "the course of making an arrest, investigatory stop, or other seizure" of a person is the Fourth Amendment's objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 388, 391, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Pursuant to this standard, three elements must be objectively examined to determine whether excessive force was used for Fourth Amendment violations: "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; and (3) the extent of the injury inflicted." *Graham,* 490 U.S. at 390, 397. It is essential to look at surrounding circumstances in each case, and analyze "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The "extent of intrusion on the suspect's rights" must be balanced against the "importance of governmental interests." *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

[17]    More specifically, Plaintiff's Complaint does not allege facts plausibly suggesting that her injuries were significant, how long the pain lasted, or that medical treatment was necessary (or even sought) following the incident. *See Smith v. City of New York,* 04–CV–3286, 2010 U.S. Dist. LEXIS 88774, at \*27, 2010 WL 3397683 (S.D.N.Y. Aug. 27, 2010) ("Courts in this Circuit have consistently held that an injury is de minimis when it is temporary and/or minor in severity.") (collecting cases).

For all of these reasons, Plaintiff's excessive force claim is dismissed on this alternative ground.

**7. Whether, in the Alternative, Plaintiff's Claims Against the Individual Defendants Should Be Dismissed Because, Based on the Factual Allegations of the Complaint, Defendants Are Protected from Liability as a Matter of Law by the Doctrine of Qualified Immunity**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 19–20 [attaching pages "18" and "19" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would the reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as indicated above in Part I.E.3. of this Decision and Order, "[u]nder federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir.2007) (internal quotations and other citations omitted). Here, based on Plaintiff's own factual allegations, it is plausible that police officers of reasonable competence could disagree as to whether Defendants' actions were unlawful (e.g., given their need to question her, and her attempt to flee the scene).

**\*12** For all of these reasons, Plaintiff's claims against the individual Defendants are dismissed on this alternative ground.

**C. Whether the Court Should Give Plaintiff an Opportunity to File an Amended Complaint Before Dismissing This Action**

Generally, when a district court dismisses a *pro se* action, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir.1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that

granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) (citations omitted), *accord, Brown v. Peters*, 95–CV–1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied").

This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco*, 222 F.3d at 103; *Brown*, 1997 WL 599355, at \*1. As explained above in Part II.B. of this Decision and Order, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12; rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.

Here, the Court has some difficulty finding that the referenced defect in Plaintiff's Complaint is merely formal. Nor is the Court confident that granting Plaintiff an opportunity to amend her Complaint will be productive. The Court notes that the errors made by Plaintiff in this action were previously made by her, and not corrected, on many occasions. Plaintiff has been ordered numerous times to file amended complaints at risk of dismissal of her case. [18] Of the seven times an amended complaint was required, Plaintiff submitted an amended complaint only three times. [19] Two of these were one page documents which did not state a claim upon which relief could be granted and were rejected by the Court, and the other did not correct the deficiencies of the original complaint. [20] Plaintiff did not comply with the Court's order

to amend her complaint at all on four occasions. [21] In one case, Plaintiff was given an additional thirty day period to file her amended complaint after she failed to do so within the first 30 day period granted to her. *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006). Similarly, in a separate case, Plaintiff did not follow up on her original claim because she failed to appear for three hearings the Court rescheduled despite warnings of her need to comply with the Court Orders. *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005). All seven of these cases resulted in dismissal, most for failure to prosecute, failure to comply with Court Orders, or failure to state a claim. Five of Plaintiff's cases were not given leave to amend because granting such leniency would have been futile. [22]

[18]    *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012).

[19]    *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007).

[20]    *Id.*

[21]    *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012)

[22]    *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. Sheriff's*

*Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. USA,* 09–CV0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011).

**\*13** However, the Court is mindful of the special solicitude that should be afforded to *pro se* civil rights litigants. For these reasons, before the Court dismisses Plaintiff's action, the Court will afford her an opportunity to file an Amended Complaint correcting the above-described pleading defects within thirty (30) days from the date of the filing of this Decision and Order.

If Plaintiff submits an Amended Complaint, she is encouraged to describe the acts of misconduct alleged therein and identify each individual who participated in the misconduct. Moreover, Plaintiff is advised that her Amended Complaint must be a complete pleading that will replace and supersede her original Complaint in its entirety. Finally, Plaintiff is cautioned that, if she fails to file, in a timely fashion, an Amended Complaint that successfully states a claim upon which relief can be granted, her action will be dismissed with prejudice without further Order of the Court.

### D. Whether This Case Should Be Forwarded to the Chief Judge with a Recommendation that an Anti– Filing Injunction Order Be Issued Against Plaintiff

A review of Plaintiff's litigation history on Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that, before filing the current action on October 13, 2010, she filed thirteen *pro se* civil actions in this District alone-twelve of which have been dismissed and the thirteen of which is being considered for dismissal. [23] A review of Plaintiff's litigation history has caused the undersigned to believe that (1) Plaintiff lacks a good-faith expectation in prevailing in her lawsuits, (2) she is vexatious and indeed incorrigible when proceeding pro se, (3) she has caused needless expense to other parties and placed an unnecessary burden on the Court and its personnel, and (4) no lesser sanctions (e.g., such as dismissal or chastisement) would be adequate to protect the Court and other parties.

[23]    *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. City*

*of Syracuse,* 06–CV–1005 (N.D.N.Y. filed Aug. 21, 2006); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. City of Syracuse,* 07–CV–0930 (N.D.N.Y. filed Sept. 7, 2007); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. USA,* 09–CV–0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

For example, eight of Plaintiff's actions have resulted in a dismissal for failure to state a claim or frivolousness, another has resulted in the pending recommendation of a dismissal on that ground, three others have resulted in a dismissal for lack of subject-matter jurisdiction, and another has resulted in a dismissal for failure to prosecute. [24]

[24]   *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457, Decision and Order (N.D.N.Y. filed Apr. 25, 2006) (Scullin, J.); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059, Decision and Order (N.D.N.Y. filed March 29, 2007) (Hurd, J.); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060, Memorandum–Decision and Order (N.D.N.Y. filed April 14, 2006) (Scullin, J.); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. City of Syracuse,* 06–CV–1005, Order (N.D.N.Y. filed Oct. 5, 2006) (Mordue, C.J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Decision and Order, (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167, Decision and Order (N.D.N.Y. filed Oct. 12, 2006) (Mordue, C.J.); *Jenkins v. City of Syracuse,* 07–CV–0930, Decision and Order (N.D.N.Y. filed Oct. 7, 2007) (Mordue, C.J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Murphy,* 08–CV–0921, Order (N.D.N.Y. filed Oct. 14, 2008) (McCurn, J.); *Jenkins v. USA,* 09–CV–0603, Decision and Order (N.D.N.Y. filed May 28, 2009) (McAvoy, J.); *Jenkins v. Rice,* 11–CV–1037, Decision and Order (N.D.N.Y. filed Oct. 11, 2011) (Kahn, J.); *Jenkins*

*v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation (N.D.N.Y filed June 28, 2012) (Baxter, M.J.).

Moreover, Plaintiff has sued the Onondaga County Sheriff's Department four times. [25] As a result, she has been repeatedly instructed on the legal standard for suing a municipality. For example, on October 6, 2006, she was specifically informed of the need to establish a custom or policy which is the moving force behind a resulting injury. *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 06–CV–1092, Decision and Order, at 4 (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.). However, despite receiving that specific information, she has *repeatedly* continued to file improper claims against the Onondaga County Sheriff's Department. [26]

[25]   *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

[26]   *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 3 (N.D.N.Y. filed Oct. 2, 2007) (Hurd, J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 2 (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV0855, Decision and Order, at 4–5 (N.D.N.Y filed May 24, 2012) (Baxter, M.J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation, at 5–6 (N.D.N.Y filed June 28, 2012) (Baxter, M.J.); *see also, supra,* Part III.B.4. of this Decision and Order.

Finally, Plaintiff has repeatedly had to be ordered to comply with the Local Rules, and reminded that all factual allegations should be contained in the complaint itself, that paragraphs ought to be numbered, and that the individuals she alleges violated her rights must be identified. *See, e.g., Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Order (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.).

**\*14** Under such circumstances, a federal district court may impose reasonable filing restrictions on a *pro se* litigant in that particular court, pursuant to 28 U.S.C. § 1651(a) and its inherent authority to control and manage its own docket

so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ( "[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08–CV–0330, 2008 WL 1767067, at * 1 (N.D.N.Y. Apr.16, 2008) (McCurn, J.).

For all of these reasons, this case is forwarded to Chief United States District Judge Gary L. Sharpe with a recommendation that an Anti–Filing Injunction Order be issued against Plaintiff.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is *GRANTED* in part and *DENIED* in part; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is conditionally ***DISMISSED;*** and it is further

**ORDERED** that Plaintiff is permitted to file an Amended Complaint within **THIRTY (30) DAYS** of the filing date of this Order; and it is further

**ORDERED** that, *if Plaintiff fails to timely file an Amended Complaint, the Clerk shall enter judgment dismissing this action without further Order of this Court;* and it is further

**ORDERED** that, upon filing of the Amended Complaint, this file in this matter be returned to the Court for further review; and it is further

**ORDERED** that the Clerk of the Court is directed to forward this case to Chief United States District Judge Gary L. Sharpe with the recommendation of the undersigned that an AntiFiling Injunction Order be issued against Plaintiff.

*The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a) (3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4052286

---

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.  14

2005 WL 357358
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Francisco PERALTA, 96-A-6821, Plaintiff,

v.

JOHN DOE, Medical Physician at Wende
Correctional Facility, RMU Unit, Defendant.

No. 04-CV-6559P.
|
Jan. 24, 2005.

**Attorneys and Law Firms**

Francisco Peralta, Staten Island, NY, pro se.

DECISION and ORDER

INTRODUCTION

SKRETNY, J.

**\*1** Plaintiff Francisco Peralta, an inmate of the Arthurkill
Correctional Facility, has filed this *pro se* action seeking
relief under 42 U.S.C. § 1983 (Docket No. 1) and has
both requested permission to proceed *in forma pauperis*
and filed a signed Authorization (Docket No. 2). Plaintiff
claims that the "John Doe" defendant, the Wende Correctional
Facility Medical Physician in the RMU Unit, violated his
constitutional rights by improperly administering a dangerous
drug without properly monitoring plaintiff's response. For the
reasons discussed below, plaintiff's request to proceed as a
poor person is granted, but unless plaintiff files an amended
complaint as directed below, the complaint will be dismissed
pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that while he was held at Wende Correctional
Facility, the John Doe medical physician deliberately denied
him adequate medical care in violation of the Eighth
Amendment. Plaintiff states that he is a dialysis patient.
The Wende physician allegedly administered Kayexalate
without properly monitoring plaintiff's response. Plaintiff

subsequently suffered myalgia so severe that he was unable
to lift his legs. Plaintiff notified the Wende physician that
something was wrong, but he was not examined. A few days
later, Plaintiff was transported to a hospital for treatment. He
claims that he suffered injuries to his right hand, feet and heart
as a result of the John Doe physician's failures to monitor
plaintiff's response to medication and to respond promptly to
his complaints.

DISCUSSION

Because plaintiff has met the statutory requirements of 28
U.S.C. § 1915(a) and filed an Authorization with respect
to this action, plaintiff is granted permission to proceed *in
forma pauperis*. Sections 1915(e)(2)(B) and 1915A(a) of 28
U.S.C. require the Court to conduct an initial screening of this
complaint. In evaluating the complaint, the Court must accept
as true all factual allegations and must draw all inferences
in plaintiff's favor. *See King v. Simpson,* 189 F.3d 284, 287
(2d Cir.1999). Dismissal is not appropriate "unless it appears
beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief." *Conley
v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80
(1957); *and see Chance v. Armstrong,* 143 F.3d 698, 701 (2d
Cir.1998).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To
state a valid claim under 42 U.S.C. § 1983, the plaintiff must
allege that the challenged conduct (1) was attributable to a
person acting under color of state law, and (2) deprived the
plaintiff of a right, privilege, or immunity secured by the
Constitution or laws of the United States." *Whalen v. County
of Fulton,* 126 F.3d 400, 405 (2d. Cir.1997) (citing *Eagleston
v. Guido,* 41 F.3d 865, 875-76 (2d Cir.1994)). Based on its
evaluation of the complaint, the Court finds that plaintiff's
claims must be dismissed pursuant to 28 U.S.C. §§ 1915(e)
(2)(B)(ii) and 1915A(b) unless plaintiff files an amended
complaint as directed below.

**\*2** Because plaintiff has not identified a defendant for
service of the complaint, the complaint is subject to dismissal.
Ordinarily, where *pro se* litigants have John Doe or unknown
defendants, together with named defendants, the complaints
are served on those named defendants and the plaintiff
pursues discover / regarding the John Doe defendants.
"Plaintiffs, especially *pro se* incarcerated plaintiffs should
be given an opportunity to identify ... unknown defendants
through discovery.' *Brown v. Doe,* 1999 WL 893070, *2

(S.D.N.Y. October 18, 1999) (deferring defendants' motions to dismiss until they have provided the requisite discovery information and materials to the *pro se* prisoner litigant) (citing *Valentin v. Dinkins,* 121 F.3d 72, 76 (2d Cir.1997) (district courts must assist *pro se* incarcerated litigants with their inquiry into the identities of unknown defendants) and *Billman v. Indiana Department of Corrections,* 56 F.3d 785, 789 (7th Cir.1995) (where circumstances "make it infeasible for the prisoner to identify someone before filing his complaint, his suit should not be dismissed as frivolous")). Here, however, plaintiff has not identified any named defendant who can be served or through whom discovery can be pursued. Therefore, the complaint cannot go forward as drafted.

The Court will permit plaintiff to amend his complaint to name a defendant for service and discovery. *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994); Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"). The Court notes that plaintiff pursued a grievance through the Central Office Review Committee regarding his medical treatment at Wende (Docket No. 1, Ex. A) and may have the identity of the John Doe defendant available to him. However, in light of plaintiff's current incarceration in another facility and the attendant difficulty that may pose to obtaining the name on his own, the Court will permit plaintiff to add the Superintendent of Wende Correctional Facility as a named defendant in order to have issue joined and make possible discovery of the John Doe defendant's identity. *Valentin,* 121 F.3d at 76 (district court "may pursue any course that it deems appropriate to a further inquiry into the identity" of the unknown defendant); *and see Munz v. Parr,* 758 F.2d 1254, 1257 (8th Cir.1985) ("Rather than dismissing the claim, the court should have ordered disclosure of Officer Doe's identity by other defendants named and served or permitted the plaintiff to identify the officer through discovery."); *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir.1980) ("the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds").

Further, because the Court finds that the defendant is likely to be represented by the New York State Attorney General, the Court will direct the Clerk of the Court to send a copy of the complaint and this order to the Attorney General's Office to facilitate the identification of the John Doe medical physician at Wende Correctional Facility, RMU Unit.

CONCLUSION

**\*3** Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization, his request to proceed *in forma pauperis* is granted. For the reasons set forth above, plaintiff's complaint must be dismissed unless he files an amended complaint by February 25, 2005 in which he includes the necessary allegations regarding his claims as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *International Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir.1977); *see also Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994). Therefore, plaintiff's amended complaint must include all of the allegations against each of the defendants against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in this action which the defendants must answer.

ORDER

IT HEREBY IS ORDERED, that plaintiff's motion to proceed *in forma pauperis* is granted;

FURTHER, that plaintiff is granted leave to file an amended complaint as directed above by February 25, 2005;

FURTHER, that the Clerk of the Court is directed to send to plaintiff with this order a copy of the original complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint;

FURTHER, that the Clerk of the Court is directed to send a copy of the complaint and this order to the Assistant Attorney General in Charge, 144 Exchange Street, Rochester, New York 14614;

FURTHER, that in the event plaintiff fails to file an amended complaint as directed above by February 25, 2005, the complaint shall be dismissed without further order of the Court;

FURTHER, that in the event the complaint is dismissed because plaintiff has failed to file an amended complaint by

February 25, 2005, the Clerk of the Court shall close this case as dismissed without further order; and

FURTHER, that in the event the complaint is dismissed because plaintiff has failed to file an amended complaint by February 25, 2005, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 357358

---

**End of Document**                                          © 2020 Thomson Reuters. No claim to original U.S. Government Works.

1999 WL 893070
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Andrew A. BROWN, Plaintiff,
v.
John DOE # 1, Correctional
Officer, et al., Defendant.

No. 96 CIV. 1222 RMBRLE.
|
Oct. 18, 1999.

**Attorneys and Law Firms**

Andrew Brown, Attica Correctional Facility, Attica, for Plaintiff.

K. Lesli Ligorner, Assistant Corporation Counsel, The City of New York Law Department, New York, for Defendant.

MEMORANDUM OPINION & ORDER

ELLIS, Magistrate J.

I. INTRODUCTION

*1 On February 21, 1996, Andrew A. Brown ("Brown") filed a complaint under 42 U.S.C. § 1983, alleging that his constitutional rights guaranteed under the Eighth and Fourteenth Amendments had been violated. Currently before this Court is the motion of defendants' New York City Department of Correction ("DOC") and Warden William Fraser ("Fraser") to dismiss Brown's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons which follow, defendants' motion is deferred until defendants have provided the requisite discovery information and materials to *pro se* incarcerated plaintiff as mandated by Local Rule 33.2, and defendants are ORDERED to answer the standard interrogatories and document requests required by Local Civil Rule 33.2

II. FACTS

The alleged incident occurred while Brown was an inmate at Riker's Island.[1] On July 27, 1994, Brown was removed from

his cell for a court appearance and placed in a holding pen to be strip-searched. Compl. at ¶ IV.[2] Two correction officers ("John Doe # 1" and "John Doe # 2", named defendants) were present. *Id.* Another inmate in the holding pen threatened Brown, in the presence of John Doe # 1 and John Doe # 2. *Id.* The other inmate was strip-searched and placed in another pen. *Id.* After Brown was strip-searched, he was placed by John Doe # 1 and John Doe # 2 in the same pen with the inmate who had threatened him. *Id.* Brown was attacked by the other inmate, who slashed him with a razor blade in the back of the neck. *Id.* Subsequent to the attack, Brown was denied adequate medical care. Compl. at IV–A.

[1]    The recitation of the facts is taken from the Complaint herein. For the purposes of this instant motion, they are assumed as true.

[2]    "Compl." refers to Plaintiff Brown's complaint under 42 U.S.C. § 1983, filed February 21, 1996.

III. DISCUSSION

The incident at issue allegedly occurred on July 27, 1994. Plaintiff Brown filed his complaint on February 21, 1996. This Court issued an Order dated June 25, 1996, designated the case as a Local Rule 48 case, and ordered plaintiff to serve interrogatories on defendant DOC asking for the identities and badge number of the "John Doe" correction officers. On April 14, 1997, the defendants filed a waiver of reply under 42 U.S.C. § 1997(e)(7)(g)(2). In a letter to this Court, defendants indicated that since they never received an order directing them to respond to the complaint in this action, they had not responded. *See* Def. Let. at 1, ¶ 3.[3] The Court granted defendant's request to extend the time to respond to the complaint to May 7, 1999. *Id.* at 2. Defendants, however, did not file an answer to the complaint. Instead, they filed the present motion to dismiss.

[3]    "Def. Let." refers to Corporation Counsel's letter to this chambers, dated April 6, 1999.

While this Court recognizes that prisoner litigation cases were, for a short period, in a state of flux after the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997(e), was enacted, the defendants have effectively failed to respond to this complaint for four years. First, defendants ignored both plaintiff's discovery requests and this Court's designation of this case as a Rule 48 case by not answering the Standard

Interrogatories mandated by Local Rule 48, now Local Rule 33.2. *See* Local Rules of the United States District Courts for the Southern and Eastern District of New York, Rule 33.2 "Standard Discovery in Prisoner Pro Se Actions" (Apr. 15, 1997). Instead, defendants chose to file a waiver of reply. [4] Then, defendants responded to this Court's Order extending time for an answer by filing a motion for dismissal. The result of the defendants' passive approach is that we still do not know the identities of the correction officers at the heart of this complaint. Granting the defendants' motion would effectively eviscerate the intent of the local rule.

[4]    Defendants maintain that they never received an order directing them to answer until this Court's Order of April 8, 1999. The defendants, however, ignored several indicia that the case had passed the Court's screening process. The docket report indicates, for example, that plaintiff had been granted in forma pauperis status, that the case had been referred to a magistrate judge for general pretrial supervision, that an amended complaint had been filed, and that plaintiff had been allowed to file interrogatories.

**\*2**  Plaintiffs, especially *pro se* incarcerated plaintiffs, should be given an opportunity to identify the unknown defendants through discovery. Indeed, our local civil rules have provided for such a case as this: when a *pro se* incarcerated litigant needs assistance in identifying alleged perpetrators, it is the affirmative duty of the named defendants, who are in the unique position of knowing that information, to answer the standard discovery requests aimed at identifying the unknown persons. Local Rule 33.2 provides that: "such defendants *shall* ... respond to the standing discovery requests adopted by the court." *Id.* (emphasis added).

In *Valentin v. Dinkins,* 121 F.3d 72, 75 (2d Cir.1997), the court recognized that " '[f]rom [a prisoner's] place of incarceration, it is hard to see what investigative tools would be at his disposal to obtain further information on [a perpetrators] identity." The panel held that district courts must assist *pro*

*se* incarcerated litigants with their inquiry into the identities of unknown defendants. *See Id.* at 76. In coming to this conclusion, the panel relied favorably on a Seventh Circuit case, *Billman v. Indiana Dep't of Corr.,* 56 F.3d 785 (7th Cir.1995). The court in *Billman* stated:

> We do not think that the children's game of pin the tail on the donkey is a proper model for constitutional tort law. If a prisoner makes allegations that if true indicate a significant likelihood that someone employed by the prison system has inflicted cruel and unusual punishment on him, and if the circumstances are such as to make it infeasible for the prisoner to identify that someone before filing his complaint, his suit should not be dismissed as frivolous.

*Id.* at 789. Also, "we do not think it an adequate discharge of judicial duties to turn away a prisoner because confinement has prevented him from preparing what may be a meritorious complaint." *Id.* at 790.

IV. CONCLUSION

Based on these principles, defendants' motion is deferred until defendants have provided the requisite discovery information and materials to *pro se* incarcerated plaintiff as mandated by Local Rule 33.2, and defendants are ORDERED to answer the standard interrogatories and document requests required by Local Civil Rule 33.2

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 893070

---

    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.    2

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1]    At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants—Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2]    Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious

physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson[3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at *1–*2.

3   It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

  - Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United

States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy*, No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy*, No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4] Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's

history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

[5] Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4. Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

## IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

## V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS *WILL* RESULT IN A WAIVER OF OBJECTIONS AND *WILL* PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Overruling Risk - Negative Treatment

Overruling Risk    Darnell v. Pineiro,    2nd Cir.,    February 21, 2017

2012 WL 1965663
Only the Westlaw citation
is currently available.
United States District Court,
E.D. New York.

Steven LUKES, Plaintiff,
v.
NASSAU COUNTY JAIL, Armor
Correctional Health, Inc., John Doe
and Jane Doe of the Nassau County
Jail, John Doe and Jane Doe Ofarmor
Correctional Health, Inc., Defendants.

No. 12–CV–1139(SJF)(AKT).
|
May 29, 2012.

**Attorneys and Law Firms**

Steven Lukes, East Meadow, NY, pro se.

*ORDER*

FEUERSTEIN, District Judge.

I. Introduction

 **\*1**  On March 7, 2012, *pro se* plaintiff
Steven Lukes ("plaintiff") filed a complaint
pursuant to 42 U.S.C. § 1983 ("Section 1983"),
accompanied by an application to proceed *in
forma pauperis.* Subsequently, plaintiff also
moved for the appointment of *pro bono* counsel
to represent him in this case. Plaintiff's financial
status, as set forth in the declaration in support
of his application to proceed *in forma pauperis,*

qualifies him to commence this action without
prepayment of the filing fees. *See* 28 U.S.C. §
1915(a)(1). Accordingly, plaintiff's application
to proceed *in forma pauperis* is granted.
However, for the reasons set forth below, the
complaint is *sua sponte* dismissed pursuant to
28 U.S.C. §§ 1915(e)(2) and 1915A(b) and
plaintiff's application for the appointment of
*pro bono* counsel is denied without prejudice.

II. The Complaint
Plaintiff alleges that while incarcerated at the
Nassau County Jail, he was denied "proper
medical treatment" for injuries he allegedly
suffered as a result of "police brutality," as well
as for his hepatitis C. (Compl. at ¶ IV). Plaintiff
seeks damages in the amount of one hundred
million dollars ($100,000,000.00). (Compl. at
¶ V).

III. Discussion

  A. Standard of Review
Under both the Prison Litigation Reform Act,
28 U.S.C. § 1915A, and the *in forma pauperis*
statute, 29 U.S.C. § 1915(e)(2), a district court
must dismiss a complaint if it is frivolous or
malicious, fails to state a claim upon which
relief may be granted or seeks monetary relief
from a defendant who is immune from such
relief. 28 U.S.C. §§ 1915A(b) and 1915(e)(2)
(B). *See Abbas v. Dixon,* 480 F.3d 636, 639
(2d Cir.2007) (finding both Section 1915 and
1915A to be applicable to a prisoner proceeding
*in forma pauperis* ).

It is axiomatic that district courts are required
to read *pro se* complaints liberally, *see Erickson
v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197,

167 L.Ed.2d 1081 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010), and to construe them " ' to raise the strongest arguments that [they] suggest[ ].' " *Chavis,* 618 F.3d at 170 (quoting *Harris v. City of New York,* 607 F.3d 18, 24 (2d Cir.2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 124 (2d Cir. Sept.2010); *see also Jackson v. Birmingham Board of Education,* 544 U.S. 167, 171, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005).

Nevertheless, a complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081; *see also Arista Records. LLC v. Doe 3,* 604 F.3d 110, 119–20 (2d Cir.2010) (accord). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955, 167 L.Ed.2d 929). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955, 167 L.Ed.2d 929). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. 544, 127 S.Ct. at 1959, 167 L.Ed.2d 929. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." *Iqbal,* 556 U.S. 662, 129 S.Ct. at 1949, 173 L.Ed.2d 868.

**B.** **Section 1983**

**\*2** Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

42 U.S.C. § 1983. To state a Section 1983 claim, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010); *cert. denied sub nom Cornejo v. Monn,* —— U.S. ——, 131 S.Ct. 158, 178 L.Ed.2d 243 (2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)). Section 1983 does not create any independent substantive right; but rather is a vehicle to "redress ...

the deprivation of [federal] rights established elsewhere." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999).

1. Claims Against the Nassau County Jail

"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002); *see also In re Dayton,* 786 F.Supp.2d 809, 818 (S.D.N.Y.2011); *Hawkins v. Nassau County Correctional Facility,* 781 F.Supp.2d 107, 109 at n. 1 (E.D.N.Y.2011); *Carthew v. County of Suffolk,* 709 F.Supp.2d 188, 195 (E.D.N.Y.2010). Since the Nassau County Jail is an administrative arm of Nassau County, without a legal identity separate and apart from the County, it lacks the capacity to be sued. Accordingly, plaintiff's claims against the Nassau County Jail are dismissed in their entirety with prejudice. However, since plaintiff is proceeding *pro se,* his claims against the Nassau County Jail will be construed as claims against Nassau County.

a. Claims Against Nassau County

A municipality or municipal entity, such as Nassau County, cannot be held liable under § 1983 on a *respondeat superior* theory. *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008). To prevail on a Section 1983 claim against a municipality, a plaintiff must show "that 'action pursuant to official municipal policy' caused the alleged constitutional injury."

*Cash v. County of Erie,* 654 F.3d 324, 333 (2d Cir.2011), *cert. denied,* —— U.S. ——, 132 S.Ct. 1741, 182 L.Ed.2d 528 (2012) (quoting *Connick v. Thompson,* —— U.S. ——, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011)); *see also Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611. "Local governing bodies ... may be sued for constitutional deprivations pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell,* 436 U.S. at 690–691 (citations omitted). To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality, *see Connick,* 131 S.Ct. at 1359; (2) actions taken or decisions made by municipal policymaking officials, i.e., officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights, *see Amnesty America v. Town of West Hartford,* 361 F.3d 113, 126 (2d Cir.2004); *Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir.2000); (3) a practice "so persistent and widespread as to practically have the force of law," *Connick,* 131 S.Ct. at 1359; *see also Green v. City of New York,* 465 F.3d 65, 80 (2d Cir.2006) (accord), or that "was so manifest as to imply the constructive acquiescence of senior policymaking officials," *Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 226 (2d Cir.2004) (quotations and citations omitted); or (4) that "a policymaking official exhibit[ed] deliberate indifference to constitutional deprivations caused by subordinates," *Cash,* 654 F.3d at 334 (quotations and citations omitted); *see also Okin v. Village of Cornwall–On–Hudson Police Department,* 577 F.3d 415, 439 (2d Cir.2009)

(holding that a municipal custom may be found when "faced with a pattern of misconduct, [the municipality] does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions." (quotations and citations omitted), i.e., "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights * * * amount[ing] to deliberate indifference to the rights of persons with whom the untrained employees come into contact," *Connick,* 131 S.Ct. at 1359 (quotations, alterations and citations omitted), or a policymaking official's failure to investigate or rectify a potentially serious problem of unconstitutional conduct of which he or she had notice, evidencing deliberate indifference, "rather than mere negligence or bureaucratic inaction," *Amnesty America,* 361 F.3d at 128.

**\*3** Even liberally construing the complaint, plaintiff's allegations are insufficient to state a Section 1983 cause of action against Nassau County. *See, e.g., White v. St. Joseph's Hospital,* 369 Fed. Appx. 225, 226 (2d Cir. Mar.10, 2010) (affirming *sua sponte* dismissal of Section 1983 claim for the plaintiffs failure "to allege that any of the allegedly unconstitutional actions were taken pursuant to an official policy or custom, as is required to state a § 1983 claim against a municipality."); *see generally City of Waterbury,* 542 F.3d at 37–41. Plaintiff has not alleged: (1) the existence of a formal policy which is officially endorsed by the County or Nassau County Jail; (2) actions taken or decisions made by County or Nassau County Jail policymaking officials which caused the alleged violations of his civil rights; (3) a County or Nassau County Jail practice so

persistent and widespread as to practically have the force of law; or (4) a failure by County or Nassau County Jail policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with their employees. Accordingly, plaintiff's claims, as construed to be against Nassau County, are dismissed with prejudice **unless plaintiff files an amended complaint stating plausible Monell claims against the County on or before July 2, 2012.** *See, e.g. Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *Chavis,* 618 F.3d at 170 (when addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated.")

2. Section 1983 Claims against the Remaining Defendants

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Back v. Hastings on Hudson Union Free School Dist.,* 365 F.3d 107, 122 (2d Cir.2004) (internal quotations and citation omitted); *see also Platt v. Incorporated Village of Southampton,* 391 Fed. Appx. 62, 65 (2d Cir. Aug.30, 2010); *Farid v. Ellen,* 593 F.3d 233, 249 (2d Cir.2010). "Personal involvement" may be established by evidence of direct participation by the defendant in the challenged conduct, or by evidence of a supervisory official's "(1) failure

to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." *Hayut v. State University of New York,* 352 F.3d 733, 753 (2d Cir.2003); *see also Rolon v. Ward,* 345 Fed. Appx. 608, 611 (2d Cir. Sept.4, 2009). "[A] defendant in a Section 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996); *see also Back,* 365 F.3d at 127; *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). A complaint based on a violation under Section 1983 that does not allege facts establishing the personal involvement of a defendant fails as a matter of law. *See Costello v. City of Burlington,* 632 F.3d 41, 48–49 (2d Cir.2011); *Shomo v. City of New York,* 579 F.3d 176, 184 (2d Cir.2009).

**\*4** Plaintiff has not established, or even alleged, the direct participation of any defendant, or employee of a defendant, in any of the wrongdoing alleged in his complaint, nor any basis upon which to find any defendant, or employee of a defendant, liable in a supervisory capacity.

Moreover, "[a] convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because the right the plaintiff seeks to vindicate arises from the Eighth Amendment's prohibition of 'cruel and unusual punishment.' " *Caiozzo v. Koreman,* 581 F.3d 63, 69 (2d Cir.2009) (quoting *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996)). However, "a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fifth Amendment if the pretrial detainee is held in federal custody, or the Due Process Clause of the Fourteenth Amendment if held in state custody." *Id .* Regardless of whether the plaintiff is a convicted prisoner or pretrial detainee, however, "the standard for deliberate indifference is the same under the Due Process Clause of the Fourteenth Amendment [or Fifth Amendment] as it is under the Eighth Amendment." *Id.* at 70–71, 72.

A claim for deliberate indifference to medical needs has both an objective and subjective component. *See Collazo v. Pagano,* 656 F.3d 131, 135 (2d Cir.2011); *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir.2011).

Objectively, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain, exists." *Hill,* 657 F.3d at 122 (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)). In order to determine whether an alleged deprivation of medical care was objectively serious, the court must inquire (1) whether the inmate was "actually deprived of adequate medical care," i.e., whether the prison officials acted reasonably in response to the inmate's medical needs; and (2) "whether the inadequacy in medical care [was] sufficiently serious," i.e., how the challenged conduct was inadequate and what harm, if any, the

inadequacy has caused or will likely cause the inmate. *Salahuddin v. Goord,* 467 F.3d 263, 279–80 (2d Cir.2006).

"Subjectively, the official must have acted with the requisite state of mind, the 'equivalent of criminal recklessness,' " *Collazo,* 656 F.3d at 135 (quoting *Hathaway,* 99 F.3d at 553); *see also Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (holding that a deliberate indifference claim "mandate[s] inquiry into a prison official's state of mind."), i.e ., the official must have "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin,* 467 F.3d at 280; *see also Caiozzo,* 581 F.3d at 72 (holding that the plaintiff must establish that the official "knew of and disregarded an excessive risk to [the plaintiff's] health or safety and * * * was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." (alterations and quotations omitted)). Generally, "mere allegations of negligent malpractice do not state a claim of deliberate indifference." *Hathaway,* 99 F.3d at 553; *see also Estelle,* 429 U.S. at 106, 97 S.Ct. 285, 50 L.Ed.2d 251 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim * * * under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Farid,* 593 F.3d at 249 ("[N]egligence is insufficient to support an Eighth Amendment claim."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (" 'Deliberate indifference' describes a mental state more blameworthy than negligence * * * [and] is a state of mind that is the equivalent

of criminal recklessness. * * * A showing of medical malpractice is therefore insufficient to support an Eighth Amendment claim unless the malpractice involves culpable recklessness, i.e., an act or a failure to act * * * that evinces a conscious disregard of a substantial risk of serious harm." (internal quotations and citations omitted)).

**\*5** Even liberally read, the complaint fails to state a claim for deliberate indifference to plaintiff's medical needs because, *inter alia,* plaintiff does not allege the personal involvement of any defendant in any of the alleged wrongdoing and plaintiff's allegations indicate only his dissatisfaction with the care provided to him during his incarceration at the Nassau County Jail and, at most, state a claim for negligence or medical malpractice. Accordingly, plaintiff's complaint is *sua sponte* dismissed in its entirety with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B)(ii) unless plaintiff files an amended complaint alleging the personal involvement of any defendant in the alleged constitutional deprivation and stating a plausible claim for deliberate indifference to medical needs **on or before July 2, 2012 .** The amended complaint must be labeled "Amended Complaint;" bear the same docket number as this Order; and clearly identify the individual(s) personally responsible for any alleged violation of his constitutional rights. In the event plaintiff does not know the names of such individuals, he must identify each of them as "John Doe Correctional Officer# 1" or "Jane Doe Medical Officer # 2, "or the like; identify the roles each of them played in the alleged constitutional deprivation; describe each of them with as much specificity as possible to enable their

Lukes v. Nassau County Jail, Not Reported in F.Supp.2d (2012)
Case 6:20-cv-01316-GTS-TWD   Document 10   Filed 11/30/20   Page 73 of 76
2012 WL 1965663

identification; and, where possible, identify the specific dates of the alleged wrongdoing.

### C. Application for Appointment of *Pro Bono* Counsel

28 U.S.C. § 1915(e)(1) provides that a "court may request an attorney to represent any person unable to afford counsel." Courts possess substantial discretion to determine whether appointment of counsel for civil litigants is appropriate, *Ferrelli v. River Manor Health Care Center,* 323 F.3d 196, 203 (2d Cir.2003), "subject to the requirement that [they] be 'guided by sound legal principle.' " *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 171–72 (2d Cir.1989) (quoting *Jenkins v. Chemical Bank,* 721 F.2d 876, 879 (2d Cir.1983)).

When deciding whether to appoint counsel to an indigent civil litigant under § 1915(e)(1), the threshold inquiry is whether there is "some likelihood of merit" to the litigant's position. *Johnston v. Maha,* 606 F.3d 39, 41 (2d Cir.2010); *see also Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 632 (2d Cir.2001) ("counsel should not be appointed in a case where the merits of the indigent's claim are thin and his chance of prevailing are therefore poor."); *see also Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986) (stating that "the district judge should first determine whether that indigent's position seems likely to be of substance").

If the threshold showing has been met, the court should next consider the following prudential factors:

[T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

**\*6** *Hodge,* 802 F.2d at 61–62; *see also Johnston,* 606 F.3d at 42 (applying the *Hodge* factors); *Carmona,* 243 F.3d at 632 (holding that "[o]nly after an initial finding that a claim is likely one of substance, will we consider secondary factors such as the factual and legal complexity of the case, the ability of the litigant to navigate the legal minefield unassisted, and any other reason why in the particular case appointment of counsel would more probably lead to a just resolution of the dispute"). However, those factors are not exclusive and "[e]ach case must be decided on its own facts." *Hodge,* 802 F.2d at 61.

Plaintiff has not established a threshold showing of merit to any of his claims. Accordingly, plaintiff's application for the appointment of *pro bono* counsel is denied without prejudice.

### IV. Conclusion

2012 WL 1965663

For the reasons set forth above, plaintiff's application to proceed *in forma pauperis* is granted; the complaint is *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2) **unless plaintiff files an amended complaint in accordance with this Order on or before July 2, 2012;** and plaintiff's application for the appointment of *pro bono* counsel is denied without prejudice. Pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court is directed to serve notice of entry of this order upon all parties, including mailing a copy of this order to plaintiff at his last known address in accordance with Rule 5(b)(2)(C).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1965663

---

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:20-cv-01316-GTS-TWD   Document 10   Filed 11/30/20   Page 75 of 76

Solis v. Conty of Westchester, Not Reported in F.Supp. (1995)

1995 WL 14072

1995 WL 14072
Only the Westlaw citation
is currently available.
United States District
Court, S.D. New York.

Carlos SOLIS, Plaintiff,
v.
COUNTY OF WESTCHESTER,
Norwood Jackson, and
Robert L. Davis, Defendants.

No. 94 Civ. 5102 (VLB).
|
Jan. 10, 1995.

**Attorneys and Law Firms**

Carlos Solis, plaintiff pro se.

Dov J. Vinar, Asst. Westchester County atty.,
White Plains, NY, for defendant.

*MEMORANDUM ORDER*

VINCENT L. BRODERICK, District Judge.

I

**\*1** In this case brought by a prisoner *pro se*
under 42 USC 1983, plaintiff claims his right
to liberty under the Fourteenth Amendment has
been violated as a result of being confined on
administrative keeplock for an unreasonable
length of time without a hearing. The individual
defendants, Jackson and Davis, have moved to
dismiss the complaint for failure to state a claim
upon which relief can be granted. Fed.R.Civ.P.
12(b)(6).

In support of their motion to dismiss, the
defendants have included an affidavit of an
Assistant County Attorney which is based
on "the files and records maintained in the
office of the Westchester County Attorney, the
Westchester County Department of Correction
and conversations with those having personal
knowledge."

Where a motion to dismiss pursuant to
Fed.R.Civ.P. 12(b)(6) presents matters outside
the pleadings and such matters are not
excluded by the court, the motion is converted
into one for summary judgment under Rule
56. Fed.R.Civ.P. 12(b). Accordingly, the
defendants current motion to dismiss will be
treated as one for summary judgment pursuant
to Fed.R.Civ.P. 56.

II

The plaintiff is directed to present any evidence
known to him which creates a genuine issue
of material fact and to set forth any additional
information not known to him necessary to
establish such an issue. Fed.R.Civ.P.Rule 56(c);
*Celotex Corp v. Catrett,* 477 US 317 (1986).

The defendants are likewise directed to present
any evidence which controverts the existence
of a genuine issue of fact.

All evidence referred to above, both the
plaintiff's and the defendants', shall be
presented to this court within 120 days from the
date of this memorandum order.

Solis v. Conty of Westchester, Not Reported in F.Supp. (1995)

Case 6:20-cv-01316-GTS-TWD   Document 10   Filed 11/30/20   Page 76 of 76

1995 WL 14072

### III

Though the current motion literally seeks dismissal only as to the individual defendants Norwood and Jackson, the defendants have asserted that the current named institutional defendant, Westchester County D.E.P.T. Of Corrections, is not a legal entity and that the real party in interest, the County of Westchester, has not yet been formally served in the manner called for by Fed.R.Civ.P. 4 or state law.

When dealing with *pro se* parties, courts interpret the rules dealing with service of process liberally. See generally, *Haines v. Kerner,* 404 US 519 (1972); *Romandette v. Weetabix,* 807 F2d 309 (2d Cir 1986); *Grammenos v. Lemos,* 457 F.2d 1067, 1070 (2d Cir 1972). Where a party contesting service of process has received actual notice, service requirements under Fed.R.Civ.P. 4 are construed liberally. *Romandette v. Weetabix,* 807 F2d 309, 310–311 (2d Cir 1986); *Grammenos v. Lemos,* 457 F2d 1067, 1070 (2d Cir1972). Deficiencies in the method of service are harmless error under Fed.R.Civ.P. 61 when the party asserting deficient service has actual knowledge of the action and no prejudice results from the delay. *Thomas v. Yonkers Police Dept.,* 147 FRD 77, 79 (SDNY 1993).

The real party in interest, County of Westchester, has actual notice of the current suit. To avoid unnecessary, time consuming motions at some later date, the caption of this action is amended to rename Westchester County D.E.P.T. Of Corrections as the County of Westchester.

**\*2** SO ORDERED.

### All Citations

Not Reported in F.Supp., 1995 WL 14072

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.